262 S.W.2d 335 (1953)
SOMMER et al.
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 28593.
St. Louis Court of Appeals. Missouri.
October 20, 1953.
Rehearing Denied December 18, 1953.
*336 Mattingly, Boas & Richards, Lloyd E. Boas, St. Louis, for appellant.
Dearing & Matthes, Will B. Dearing, Hillsboro, for respondents.
WOLFE, Commissioner.
This is an action to recover damages sustained by reason of a collision that occurred between a bus operated by the defendant and an automobile owned and operated by Ralph Sommer. Joseph Sommer was a passenger in the automobile and he sought recovery for bruises that he had sustained. Ralph Sommer sought recovery for injury to his back and damage to his automobile. The trial resulted in a verdict and judgment in favor of Ralph Sommer in the sum of $3,500 and a verdict and judgment in favor of Joseph Sommer in the sum of $300. The defendant prosecutes this appeal.
The record discloses that the plaintiffs were brothers who were both employed by the same company and went to work each morning in Ralph's automobile. Their ride was shared by three other persons who worked in downtown St. Louis and lived in the neighborhood where the plaintiffs resided. On the morning of April 17, 1951, Ralph Sommer was driving to work with the four others in his car.
He and Joseph sat in the front seat with another passenger and the other two were seated in the rear. Shortly before eight o'clock he was driving eastwardly on Chestnut Street. In the morning hours this street was restricted to eastbound traffic and vehicles traveled in that direction over the whole width of it.
Ralph Sommer testified that as he approached the intersection of Seventh *337 Street, which crosses Chestnut Street in a north and south direction, his car was in the north lane and was part of a line of traffic moving eastward. Seventh Street was restricted to northbound traffic and on the southeast corner of the intersection there was a stop sign facing northbound traffic as it approached Chestnut Street.
Ralph testified that his speed of travel was between ten and fifteen miles per hour and that there were automobiles ahead of him and to the rear of him. After he had entered the intersection a bus operated by the defendant which had stopped on Seventh Street came from a position south of Chestnut Street into the intersection and struck the automobile in which the plaintiffs were riding. Sommer's automobile was struck just back of the right front fender and pushed to the northeast. At the time of the impact the front of his car had reached the east curb line of Seventh Street and lacked but its own length to be clear of the intersection.
Ralph Sommer at first felt no discomfort from the collision except for a slight cut on his hand and he went on to his place of employment. That afternoon he felt a dull pain in the lower part of his back and the next day he visited his family physician and X rays were taken. The pain continued in his back for four or five weeks and then left, but he started getting pains around the lower portion of his spine and his legs ached when he drove his automobile. He said that in about February of 1952 the discomfort became worse so he returned to his physician, who again X-rayed him and prescribed that he wear a sacroiliac belt, which was a supporting canvas contraption. Sommer has worn the belt since then but lost no time from work. He made no claim for loss of wages but his car was damaged in the sum of $325, and he had medical expenses amounting to $75.
Dr. Hayden, who treated both plaintiffs, testified that Ralph suffered from a low back sprain, which was an injury to the ligaments and muscles at the lower part of the spine. He said that it was a condition that could be painful. He also stated that Ralph Sommer had a spina bifida, which was a congenital deformity of the spine and that such backs were subject to injury by less trauma than the normal backs. In March of 1952 Dr. Hayden still found muscle spasms in the injured region and some limitation of motion. He prescribed the sacroiliac belt that immobilizes the back to some extent and recommended hot baths to relax the muscles. He stated that the injury was not permanent but he could not say how long the pain would persist.
As to Joseph Sommer he had a bruise upon his shoulder and on his hip. They appeared to heal in the normal way but he testified that his shoulder still hurt him at times.
The defendant's evidence was to the general effect that after the bus started into the intersection Ralph Sommer tried to cross in front of it. The bus driver stated that he saw Sommer's car and that he had started to cross Chestnut Street before it had entered the intersection. He said that he thought it would go to the rear of the bus.
It was upon the foregoing evidence that the jury found for the plaintiffs in the sums mentioned. The defendant raises three points upon appeal, the first of which is that the jury was erroneously instructed.
It is contended that the verdict-directing instructions did not submit sufficient facts to authorize a finding of negligence and constituted "a roving commission to the jury". The two instructions complained of are identical in substance. One of them relates to Ralph Sommer's claim and the other to the claim of Joseph Sommer. The first instruction is as follows:
"The Court instructs the jury that if you find and believe from the evidence that on April 17, 1951, the plaintiff Ralph Sommer was operating an automobile east on Chestnut Street in the City of St. Louis, Missouri, and if you further find that at the time he entered the intersection of Chestnut and Seventh Streets the motorbus spoken of in evidence, which was traveling *338 north on Seventh Street, had not reached the intersection and was south of Chestnut, and if you further find that as eastbound traffic was going through the intersection, including the automobile being driven by Ralph Sommer, that the motorbus driver, acting for and on behalf of the defendant company, drove into the intersection and struck and collided with the automobile being operated by this plaintiff and in so doing was guilty of negligence, and if you further find that Ralph Sommer was at all times exercising the highest degree of care in the operation of his automobile, then you are instructed that under the law the plaintiff Ralph Sommer is entitled to recover and your verdict will be in his favor."
It is asserted that under our ruling in Stakelback v. Neff, Mo.App., 13 S.W.2d 575, and Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, the instruction is faulty in that it fails to require a finding that there was an apparent danger of collision. Both of those cases had to do with collisions occurring at intersections, but the negligence charged and submitted was a failure to swerve, stop or slow down. We held that when a plaintiff relied upon the duty of the defendant to take precautionary measures the instruction was bad unless it properly stated the time when the duty arose, concluding that there was no duty upon the defendant to stop or swerve or warn until it became reasonably apparent that a collision would result unless he did so.
The negligence relied upon in this case is the failure to yield the right of way to the car in which the plaintiffs were riding. Our statutes do not explicitly grant the right of way to a vehicle first entering the intersection, but in a situation such as this, where the plaintiff's car was in the intersection, traveling an a busy thoroughfare before the defendant's bus entered the intersection, plaintiff had a right to cross. As stated in 60 C.J.S., Motor Vehicles, § 362, p. 871:
"Under statutes expressly so providing, vehicles approaching an intersection must yield the right of way to vehicles which have already entered the intersection. * * * Apart from, or without reference to, such statutes, or at least in the absence of regulations establishing a different rule, it has been held that the vehicle first reaching and entering an intersection has the right of way over a vehicle subsequently reaching it; and the driver of the latter vehicle should delay his progress so as to allow the first arrival to pass in safety."
The plaintiffs' evidence and instruction put the cars traveling toward a point of collision. The defendant's driver saw the plaintiff's car. It does not appear that under the circumstances the failure to require a finding that the defendant saw or should have seen that a collision was likely to occur rendered the instruction fatally defective, for the real factual issue was: Who entered the intersection first? As stated in Hooper v. Conrad, Mo.Sup., 260 S.W.2d 496, 500:
"Where the evidence presents two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not, then a verdict-directing instruction or instructions given in his behalf should hypothesize, either by recital or by reference to other instructions, the facts essential in law to support the verdict. * * * And, we may add, that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction."
The instruction meets these requirements and while it is true that it does not spell out a failure on the part of the defendant to stop so that the plaintiff's car might pass, it does require a finding that the bus came on through the intersection and *339 struck the plaintiff's car. Thus it states a positive act of negligence rather than a negligent omission. On this score the Supreme Court in Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914, loc. cit. 918, said:
"Quaere: Which is more specific? Defendant hit plaintiff on the nose, or, defendant failed, refused and neglected to keep his hands in his pockets and to prevent them from coming in contact with plaintiff's nose."
Another point raised is that the instruction does not require a finding that the defendant's negligence was the proximate cause of the injury and damages suffered by the plaintiffs. In passing upon the same question this court held in Westerman v. Brown Cab Co., Mo.App., 270 S.W. 142, that the words "proximate cause" were not necessary and where the instruction by its reasonable meaning required the jury to find a causal connection between the damages and the negligence such instruction is sufficient. Considering the instruction as a whole, it suffers from brevity and is not to be recommended as a model for the type of negligence submitted, but it cannot be said, under the issues here presented, that it was erroneous and that the jury was misdirected by it.
The appellant asserts that the court erred in refusing to grant a recess for the purpose of securing the attendance of a witness. After having put on all of the defense testimony except that of a physician who examined the plaintiffs, the attorney for the defendant announced at 11:30 a. m. that the doctor could not be present in court until 2:00 p. m. The Judge then asked: "Do you have his report, Mr. Bell, that you could use? I don't compel Mr. Dearing to agree that the doctor would so testify if he were present but if he does, if he sent you a report" Then counsel interrupted, stating: "Well, I think the reading of a report is one thing, your Honor, and the doctor actually being here is something else. May I ask the Court's permission to have five more minutes to make another `phone call?"
The time to make the call was granted, and later, out of the presence of the jury, the attorney for the defendant stated that the doctor could not be present until 2:00 p. m. He said that the doctor was not under subpoena and that he had attended a funeral that morning and then performed an operation. Defense counsel could give no definite assurance that the doctor would be in court at 2:00 p. m. At this point the court denied the request for a recess and concluded the trial of the case. It is claimed that the court's original question about the doctor's report was prejudicial. No objection was made to the question by the court but it cannot in any event be said defendant was prejudiced by it. He had the doctor's report and the plaintiffs consented to the reading of it. As to the denial of the request for a recess, it is said that this was an abuse of discretion. We are cited to a number of cases dealing with requested continuances which the defendant thinks support its view, but none of them has to do with the simple question of a recess in the course of trial and they are not in point. Questions such as this arise in most every trial and their determination rests within the discretion of the trial judge. Here the witness was not under process to appear and the assurances that he would appear were vague, so the court did not abuse its discretion in denying the request.
A further point raised is that the verdict is grossly excessive as to the $3,500 awarded Ralph Sommer. Of this amount $325 was for the admitted damage to his automobile and there was a medical bill of $75 which was unquestioned. This left a total of $3,100 of the award which may properly be considered as the damages found by the jury for the injuries sustained. As stated above, Sommer was still suffering from a back strain about a year after the collision, and in addition to that he had been obliged to give up golf and bowling which he had previously enjoyed as a pastime. The trial judge, who had the advantage of seeing the witness, did not consider the verdict excessive and we are cited to no cases of comparable injuries which hold that a verdict of this size should not stand. *340 It must be concluded that the record does not support the defendant's contention and the verdict is not one calling for appellate correction by remittitur.
For the reasons stated, it is the recommendation of the Commissioner that the judgment be affirmed.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly affirmed.
BENNICK, P. J., and ANDERSON, J., and LAWRENCE HOLMAN, Special Judge, concur.