Fern COOKSEY, Respondent,

v.

ACE CAB COMPANY, a Corporation, and Billy Welch, Appellants.

No. 44803.

Supreme Court of Missouri.

Division No. 1.

March 12, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied April 9, 1956.

Morris A. Shenker, William P. Byrne, St. Louis, for appellants.

Granville L. Gamblin, Byron A. Roche, St. Louis, for respondent.

**HOLLINGSWORTH, Judge.**

Defendants have appealed from a judgment rendered upon a verdict returned in the Circuit Court of the City of St. Louis in favor of plaintiff in the sum of $8,600 for personal injuries sustained by plaintiff when an automobile driven by her was struck by a taxicab owned by defendant Ace Cab Company and operated by defendant Billy Welch at the intersection of Taylor Avenue and Forest Park Boulevard in said city. Defendants here contend that plaintiff was guilty of contributory negligence as a matter of law, that plaintiff's submission instructions One and Two were erroneous, and that the verdict was excessive. Defendants adduced no evidence except that of a medical expert relating to the extent of plaintiff's injuries. Plaintiff's evidence on the issue of liability, therefore, stands uncontroverted.

Taylor Avenue, a four lane street, extends north and south. Forest Park Boulevard, divided by a parkway extending along its center, extends east and west and intersects Taylor Avenue at right angles. Both streets are extensively used traffic ways. The portion of Forest Park Boulevard south of the dividing parkway is three lanes in width and is used exclusively for eastbound traffic. The portion north of the parkway is also three lanes in width and is used exclusively for westbound traffic. The width of the parkway is not stated but photographs show it to be two or more car (automobile) lengths in width. These photographs also show stop signs at the extreme south and north curblines of Forest Park Boulevard for traffic proceeding along Taylor. There are, however, no stop signs at either the north or south curblines of the parkway, and there are no stop signs governing either eastbound or westbound traffic moving along Forest Park Boulevard as it crosses Taylor. Parking on the north

portion of Forest Park Boulevard is confined to the outside or north lane.

The collision occurred on October 16, 1953, at 1:50 p. m., as plaintiff, alone, and returning from her employment at A & P Bakery, drove a 1953 Ford automobile northward on Taylor. The weather was clear and the pavement was dry. A northbound automobile was preceding her as she crossed the south portion of Forest Park Boulevard. It stopped alongside the parkway in the center of the boulevard and then proceeded onward into the north portion thereof. Plaintiff stopped alongside the parkway with the front of her car near its north curb (if extended) and looked eastward along Forest Park Boulevard for oncoming westbound traffic. She saw a flatbed motor truck and immediately and directly behind it the taxicab which later struck her car. These vehicles, the truck and taxicab, were approximately 200 feet east of the intersection and both were travelling in the lane adjacent to the north curbline of the parkway. There were no approaching vehicles to the right or north of them. The car ahead of her was moving through the intersection. She started forward in low gear into the intersection, "because the truck and the car (taxicab) was down there". Due to traffic ahead of it, the car preceding her slowed and stopped, forcing her to stop, which, due to her slow rate of speed, she was able to do instantly. When she was thus stopped, the front of her car was about one foot to the rear of the car ahead of her and six feet south of the north curbline of Forest Park Boulevard. The east side of her car was to the right of the center line of Taylor. Southbound traffic was moving along the west half of Taylor. After her car had been stopped "just a few seconds", she heard a squealing of brakes and for the first time since entering the intersection looked to her right. The braking noise was made by the taxicab, which was then "coming up beside the truck", along and almost even with its right side. At that time the taxicab was near the northernmost lane of Forest Park Boulevard and was travelling between 30 and 35 miles per hour. The truck, which had remained in the lane adjacent to the parkway, passed to the rear of plaintiff's car. As it did so, the front of the taxicab skidded into violent collision with the right front portion of plaintiff's car, causing her to be injured. Plaintiff could do nothing to extricate herself from the situation created by the oncoming taxicab. She could not back her car; to have done so would have brought her into the path of the truck. She could not turn to her left or go around the car in front of her because of the southbound traffic on Taylor. Skid marks made by the taxicab extended in a straight line along the pavement eastward from the taxicab for a distance of approximately fifteen feet.

Defendants do not contend that plaintiff did not make a submissible case. They do insist, however, that plaintiff was guilty of contributory negligence as a matter of law in entering the intersection when she was aware of the approach of the taxicab, its distance from the intersection and its speed, and in thereafter failing to look to her right when such a precaution would have apprised her of the impending danger in time to have enabled her to stop her car and avoid the collision. In support of this contention, defendants cite: Burton v. Moulder, Mo., 245 S.W.2d 844; Branscum v. Glaser, Mo., 234 S.W.2d 626; Hammond v. Emery-Bird-Thayer Dry Goods Co., Mo., 240 S.W. 170; Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; and Folluo v. Gray, Mo.App., 256 S.W.2d 273. Unfortunately, none of them is even remotely in point upon a fact situation similar to that here involved.

Section 304.021 RSMo 1949, V.A.M.S., enacted Laws 1953, page 587, and in effect when this collision occurred, provides:

"1. The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway, provided however, there is no form of traffic control at such intersection.

"2. When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of

way to the driver of the vehicle on the right. * * * "

■ Plaintiff entered the intersection when defendants' taxicab was yet 200 feet from it. No contention is made that there was any form of traffic control at the intersection at that time and the photographs show none. Therefore, literal compliance with the statute required defendants to yield the right of way. Of course, the fact that plaintiff reached and entered the highway first would not justify her in attempting to cross in front of defendants' taxicab if by the exercise of the highest degree of care she saw or could have seen that to do so would bring their vehicles in danger of collision. Burton v. Moulder, Mo., 245 S.W.2d 844, 846; Ferguson v. Betterton, Mo., 270 S.W.2d 756, 762. But, as plaintiff entered the intersection, it then appeared that she had only to clear the traffic lane in which the truck and taxicab were then proceeding in order to be clear of danger from either of them. The truck and taxicab were 200 feet from the intersection. The evidence does not show their speed at that instant but there is no suggestion they at any time travelled in excess of 35 miles per hour. On the other hand, plaintiff's testimony that the taxicab was later travelling at 30 to 35 miles per hour when it was passing the truck would warrant an inference that its speed had been increased after plaintiff first saw it following the truck. No contention is or reasonably could be made that the taxicab, travelling at a speed of 35 miles an hour, could not have been stopped within 200 feet. See Vol. 9C Blashfield Cycl. A.L. & P., § 6237, p. 410. While the statute, as stated, did not give plaintiff the unqualified right to enter the intersection prior to the taxicab under any and all circumstances, yet it did give her the right to assume, in the absence of evidence to the contrary, that defendants' taxicab would not negligently run her down. Ritzheimer v. Marshall, Mo.App., 168 S.W.2d 159, 165; Ferguson v. Betterton, Mo., 270 S.W.2d 756, 762. There is no such evidence. Furthermore, after entering the intersection under the circumstances shown by the evidence, plaintiff could have done nothing to avoid the collision. Consequently, any failure on her part to look to her right after entering, even if negligent, could not have been an efficient or producing contributing cause of the collision and would not therefore bar her right of recovery. Hoppe v. St. Louis Public Serv. Co., Mo.App., 227 S.W. 2d 499; Hoppe, Inc., v. St. Louis Public Serv. Co., Mo., 235 S.W.2d 347.

■ Defendants' next assignment of error (set forth under "Points and Authorities") is, literally: "The Court erred in giving to the jury Instruction No. I for the reason that said instruction is a comment on the evidence, fails to hypothesize sufficient facts upon which the jury could return a verdict, and injects the issue of primary negligence into a specific negligence submission." Turning to the argument for an elucidation of the alleged error, we do not find any explanation of the criticism of Instruction No. I as being a "comment on the evidence". Neither do we find any explanation of the criticism that it "injects the issue of primary negligence into a specific negligence submission"— which, incidentally, would have been interesting. Our review of the instruction is therefore limited to its alleged failure to hypothesize sufficient facts upon which the jury could return a verdict. In support of that contention, defendants argue:

■ (1) that "the instruction fails to require a finding that a truck was proceeding westwardly, fails to require a finding as to plaintiff's speed when entering the intersection, how long plaintiff was stopped, and gives the jury a roving commission to determine that plaintiff had been stopped for any length of time before being struck";

(2) that Instruction No. I was "based upon an instruction given in the case of Sommer v. Public Service Company [Mo. App.], 262 S.W.2d 335, which required a finding of negligence if defendant drove into the intersection and collided with the plaintiff. In that case there was direct evidence by defendant's operator that he saw the car of plaintiff's in the intersection. The Court held that the requirement of

'seeing' did not have to be included. However, in the instant case there was no evidence whatever that defendants saw plaintiff, remembering that defendants' taxi was traveling behind a truck. Therefore, appellants contend that whether or not defendants saw plaintiff was a very necessary finding and should have been a part of the instruction";

(3) that it "fails to require a finding that defendants knew or should have known that there was danger of a collision and merely requires a finding of negligence on approaching the intersection at a speed of 30 to 35 miles per hour, thus in effect requiring the jury to find a violation of a duty toward plaintiff where none existed."

The instruction is long; it does not mention the truck, nor the length of time plaintiff's car remained stopped before the taxicab collided with it. But, it does hypothesize an otherwise detailed statement of the essential facts testified to by plaintiff as hereinabove set forth, and further that "if you further find and believe that plaintiff stopped her automobile when the front of said automobile was approximately six feet south of the north curb line of said Forest Park Boulevard and that while plaintiff was so stopped defendant Billy Welch approached and entered said intersection and collided with the automobile occupied by plaintiff and that the defendant Billy Welch approached and entered said intersection at a speed of from thirty to thirty-five miles per hour; and if you further find and believe from the evidence that in operating said taxi cab at a rate of speed of from thirty to thirty-five miles per hour under the aforesaid conditions the operator of defendant's cab was negligent, * * *".

There is no fact or circumstance shown by the evidence or asserted by defendants that the length of time which plaintiff's car remained stopped in the intersection constituted any excuse for or justification of defendant's driving into it, such as a sudden and unexpected stop when the taxicab, operated with due care, could not have avoided colliding with it. In the absence of such evidence, there was no issue on that score, and such an omission could not have been prejudicially erroneous.

■ As to defendants' contention that there was no evidence that the defendant driver saw plaintiff: The fact that plaintiff saw the taxicab as she came to the intersection and stopped her car immediately adjacent to the curbline on the north side of the parkway would warrant an inference that defendant driver, in the exercise of the highest degree of care, could likewise have seen plaintiff, Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 76, and that her position was such that he, 200 feet to the east of the intersection, should anticipate her entrance into the intersection ahead of him. Furthermore, an exercise of the highest degree of care unquestionably placed a duty upon the defendant driver not to approach and come dangerously near any vehicle that might lawfully be in a busy intersection ahead of him, as was plaintiff's car, without first being able to see and seeing whether such a vehicle was there; and an approach and entry into the intersection without his so ascertaining (and without evidence of lawful justification for such failure) in and of itself would constitute negligence. In view of plaintiff's evidence that defendants' taxicab did enter the intersection after she had lawfully preempted it and, in the absence of any evidence to the contrary, defendants (without evidence to support them) will not be permitted to assert defensively that the taxicab driver may have justifiably entered the intersection at a speed of 30 to 35 miles (or, for that matter, at any other rate of speed) when he either could not or did not see plaintiff's car priorly in it.

■ Moreover, the statute made it the absolute duty of the driver of the taxicab to yield the right of way to plaintiff under the circumstances shown by plaintiff's evidence and hypothesized in Instruction No. I. Certainly, in so providing, the statute presupposed a further duty on the part of the defendant driver not to come up to and enter the intersection until he could and did see whether plaintiff's car (assuming that it approached and entered as hypothesized

in Instruction No. I) had entered it. To hold otherwise would enable defendants to nullify or avoid the purpose of the statute by their own unlawful conduct. The assignment must be overruled.

█ Plaintiff's Instruction II provided: "* * * if you further find that at the time she entered the intersection of Taylor Avenue and Forest Park Boulevard, if so, the taxi cab mentioned in evidence, was traveling in a westwardly direction on said Forest Park Boulevard and at said time had not reached the intersection and was east of Taylor Avenue, and if you further find that Fern Cooksey, was stopped in said intersection and that Billy Welch, acting for and on behalf of defendant Ace Cab Company, drove into the intersection and struck and collided with the automobile being occupied by this plaintiff and in so doing was guilty of negligence, and that as a direct result of said negligence, if any, plaintiff was caused to sustain bodily injuries and damages then you are instructed that under the law the plaintiff Fern Cooksey is entitled to recover * * *"

Defendants say of this instruction: (1) "There was no evidence whatever that defendants saw plaintiff in time to avoid the collision." (We have hereinabove disposed of that question adversely to defendants.) (2) "The instruction comments on the evidence by requiring the jury to find defendants saw plaintiff." (The instruction does not so require, but certainly would not have been prejudicially erroneous to defendants had it done so.) (3) "The instruction gives the jury a roving commission to determine how long plaintiff was stopped in the intersection and to speculate where defendants' taxi was at the time she entered the intersection." (The instruction does require the jury to find that the taxicab was east of Taylor when plaintiff entered the intersection and that while her car was stopped in the intersection defendants' taxicab was driven into the intersection and collided with plaintiff's car.)

█ Giving defendants the full benefit of the best possible interpretation of the foregoing contentions as to Instruction II, the essential question is: In the absence of any evidence that plaintiff failed to exercise the highest degree of care as she entered into and stopped her car in the intersection, may the jury return a verdict in her favor, or must she go further and prove (and, if so, of course, plead) and submit to the jury an affirmative finding that she was guilty of no negligence that contributed to her injuries before she can recover? We have been cited to no authority that would support such a contention. It is true that in the case of Sommer v. St. Louis Public Service Company, Mo.App., 262 S.W.2d 335, 337, plaintiff's submission instruction required a finding that plaintiff was at all times exercising the highest degree of care in the operation of his automobile as he entered the intersection, but in that case defendant adduced testimony tending to show that plaintiff was contributorily negligent in trying to cross in front of defendant's bus. As we have stated there is no such evidence in this case. We hold that under the statute plaintiff's Instruction II hypothesized a submissible case upon the mere showing of her entry into and actual possession of the intersection an appreciable length of time ahead of defendants' taxicab. 60 C.J.S., Motor Vehicles, § 362 b (3), p. 871; Sommer v. St. Louis Public Service Company, supra.

█ Lastly, in the light of the testimony most favorable to plaintiff, we consider defendants' assignment that the verdict is excessive. Arditi v. Brooks Erection Co., Mo., 266 S.W.2d 556, 560. Plaintiff's age is not shown, but the record does show that she is married, lives with her husband, and is the mother of twin girls born some two years prior to the collision. Before the impending birth of the twins, plaintiff was employed at the A & P Bakery. She had returned to her former employment only two days before the collision. Her health was then good, she was able to and did perform her household work and to care for the twins. Upon her return to work, her salary would have averaged $50 per 40 hour week.

When the taxicab struck her car, her head hit the window and her body came

up against the steering wheel, injuring her head, neck, shoulder and back. She suffered immediate pain and was taken to a hospital, where X-rays were made and she was sent to her home. After making three trips to the hospital for further X-rays, she consulted Dr. Sylvester H. Pranger, who has been her attending physician since October 24, 1953.

When she first consulted Dr. Pranger, she was suffering pain in her head, neck and shoulder, her head was swollen, her left eye discolored and there was swelling and pain in her right thigh, lower back and coccyx, and pain radiating down the left thigh. Since the collision she has continued to suffer pain in her lower back. The pain goes down into her left leg and causes a numbness as though her leg were "asleep", it seems there is "no leg to stand on", and she frequently falls, to her great embarrassment if others are present. She has not been able to perform her usual household tasks, to care for the twins, or to return to her work, due to the fact that stooping to sweep, to make beds, to lift the twins, causes intense pain or to lift trays and packing boxes required by her employment would cause such pain. She has depended generally upon neighbors and friends to help her with the twins but has hired assistance when they were sick.

When she first saw Dr. Pranger, he gave her deep injections into her lower back and left hip to relieve the pain and also gave her pills for that purpose, both of which do give her relief to some extent, but she is required to continue such treatments, otherwise her pain becomes extreme. These injections, at first given every few days and later less frequently, have continued to date. She also continues to take the pills regularly. Since her injuries, and only since then, she has been unable to sleep because of pain. She walks with a slight limp.

Dr. Pranger, a widely experienced and accredited physician and instructor in surgery in St. Louis University since 1932, gave her a complete examination when he first saw her and has since been her physician. He found a bruise on her hip and, upon X-ray examination, also found a change (increase in space) in the width of the left sacroiliac joint, which led him to determine that plaintiff had suffered a subluxation (separation) of that joint and a central irritation which would account for plaintiff's sciatic irritation. He has given her 20 or 25 deep hypodermic injections, which act as a local anesthetic and healing agency. Plaintiff's superficial injuries have improved, but her low back injuries are permanent and she will henceforth continue to suffer pain, subject to such relief as the injections and sedatives may continue to afford. It was also his opinion that plaintiff's condition was due to the injuries she sustained in the collision.

Defendants, in support of their contention that the verdict is excessive, cite the following cases: Brown v. Payne, Mo., 264 S.W.2d 341; Jones v. Terminal R. R. Ass'n of St. Louis, Mo.App., 246 S.W.2d 356; Hicks v. Hammond Packing Co., 184 Mo.App. 672, 171 S.W. 937. We find none of them sufficiently analogous to the injuries here shown to be persuasive.

At the time of the trial plaintiff had lost in excess of $3,000 in salary, leaving her an award of $5,600 for her injuries. There is substantial evidence of a severely permanent impairment in her back and that she will permanently suffer pain without surcease except for the continued effective use of medication. We are not convinced that the trial court, who saw plaintiff at the trial, was in error in refusing to require a remittitur.

The judgment is affirmed.

All concur.