**Mary C. CREECH, Appellant,**

v.

**Preston BLACKWELL, Respondent.**

No. 45432.

Supreme Court of Missouri.

Division No. 1.

Jan. 14, 1957.

Motion for Rehearing Denied and Opinion Modified on Court's Own Motion
Feb. 11, 1957.

B. Richards Creech, St. Charles, for appellant.

William Waye, St. Charles, Fuller, Ely & Hibbard, Hannibal, for respondent.

COIL, Commissioner.

Mrs. Mary C. Creech, plaintiff below, was seriously injured when, on November 9, 1953, at about 5:15 p.m., an automobile, operated by her husband, in which she was a passenger, was struck by an automobile operated by defendant. In her action for $50,000 damages for resulting personal injuries a jury returned a defendant's verdict and she has appealed from the ensuing judgment. Mrs. Creech here contends that the trial court erred in failing to direct a plaintiff's verdict, or thereafter enter a plaintiff's judgment, on the issue of liability, and in the giving and refusing of instructions.

The collision occurred in the intersection of U. S. Highway 61 and Missouri Highway 47 just east of the city limits of Troy. The automobile in which plaintiff was riding (hereinafter sometimes referred to as the Creech car) was proceeding from west to east on 47 across 61 and defendant's automobile northwardly on 61. Highway 61, a concrete road, was 20 feet wide south and north of the intersection, but at a place 280 feet south of the center of the intersection it began to widen and from 210 feet south was 40 feet in width. Highway 47 west of 61 was about a 20-foot wide, concrete road and widened as it approached 61's west edge, with a concrete "apron" at its south edge for use of traffic turning south onto 61. There was a stop sign (existing by authorization of a Troy city ordinance) for eastbound 47 traffic located on the south side of 47 and 45 feet west of the west edge of 61. Both highways were essentially level and straight at the intersection. While 61 descended to the intersection 65.9 feet in the distance from a point 1,800 feet south, the last 400 feet of such descent was gradual so that Highway 61 was generally level for at least 400 or 500 feet as one approached 47 from the south. There were 11 poles on the east side of 61 as it approached and passed 47 on which were lights which went on automatically when it was sufficiently dark. The lights of both automobiles were on at the time of the collision. There was a suspended center light over the center of Highway 61 and 10 feet north of the center of 47, which continuously blinked red for traffic on 47 and continuously blinked amber for traffic on 61.

The intersection was "open" in that a driver of a car traveling east on 47 could see south on 61 for at least 600 feet from a distance 45 feet west of 61 and continuously to the intersection. Likewise, the driver of a car traveling north on 61 could see the intersection and at least 45 feet to the west thereof from a place at least 1,600 feet south of 47 and continuously to the intersection. The front of defendant's automobile struck the right front door of the Creech car at some place in the intersec-

tion's southeast quadrant. The Creech car came to rest against a light pole 130 feet north of the center of the intersection and down an embankment to the east. Defendant's car came to rest with its front off the north half of Highway 47, 20 or 30 feet east of 61.

Plaintiff pleaded both primary and humanitarian negligence. The case was submitted to the jury solely on humanitarian negligence but only after two proffered primary negligence instructions were refused over plaintiff's objection. We shall consider whether plaintiff was entitled to a directed verdict and judgment on liability under either primary or humanitarian negligence.

■ The trial court did not err in failing to direct a plaintiff's verdict on the issue of defendant's primary negligence liability or in failing to enter judgment for plaintiff on primary negligence liability after defendant's verdict and judgment. That is because, irrespective of any other reason, the evidence made a jury issue on plaintiff's contributory negligence

Mrs. Creech, 72 at accident time, was a front-seat passenger in the Creech car. She testified that her husband stopped the car before entering the intersection; that she looked to her right and left and saw no automobile approaching; that she was a "rather close observer" and there was nothing to indicate any traffic in close proximity to the intersection; that she saw no automobile approaching even after the Creech car was on Highway 61; that the weather was good and, while their lights were on, it was not "too dark"; and that the intersection was well lighted. There was evidence that a vehicle approaching from the south within several hundred feet of the intersection was visible and in the line of vision of a front-seat passenger in the Creech car from a place at least 45 feet west of the west edge of 61 and continuously thereafter to collision point. Mr. Creech, the husband driver, testified for plaintiff that he could have stopped

his automobile within 3 feet as he approached and partially crossed 61. All the evidence indicated that defendant's automobile was approaching from the south within view of plaintiff at all times as the Creech car proceeded 65 feet or more to collision point.

The foregoing evidence was clearly sufficient to make a jury issue on plaintiff's contributory negligence. From that evidence, a jury reasonably could have found that plaintiff in the exercise of ordinary care should have seen defendant's automobile approaching the intersection at such a time and place as to indicate danger to her, in time thereafter to have warned her apparently oblivious husband of such, and that the husband driver thereafter, in the exercise of the highest degree of care, could have avoided the collision. Toburen v. Carter, Mo., 273 S.W.2d 161, 164[1, 2], [3, 4].

■ The trial court did not err in failing to direct a plaintiff's verdict, or in failing thereafter to enter a plaintiff's judgment, on liability on defendant's humanitarian negligence. That is because the evidence and the reasonable inferences therefrom, considered most favorably from the standpoint of defendant, made a jury issue as to whether defendant in the exercise of the highest degree of care could have "slackened and stopped" (the action hypothesized and here argued by plaintiff) in time to have avoided the collision after he saw or in the exercise of the highest degree of care should have seen plaintiff in a position of imminent peril.

It is true, as plaintiff points out, that defendant testified that he did not see the Creech car until it was well into the intersection and, in fact, the reasonable conclusion from all his testimony on the subject is that he did not see the Creech car, as such, until an instant before impact. It is also true that the evidence was conclusive to the effect that defendant, in the exercise of the highest degree of care, should have seen the Creech car at the time its front

was crossing the west edge of Highway 61. That is because testimony adduced by defendant through one of defendant's front-seat passengers and through two other witnesses who were in a following car, 75 to 100 feet behind defendant, actually saw the Creech car when it was in that position moving steadily toward the collision point; and defendant's position to have so seen was as good or better than theirs; and defendant testified that at that time his attention was not diverted from the place where the Creech car then was. But even so, the driver of the Creech car testified that he could have stopped within 3 feet at any time prior to the collision point, and while there was evidence of his obliviousness, still it was a jury question as to just when and where plaintiff came into and was in a position of imminent peril. (We, of course, do not mean to imply that a jury reasonably could not have found that defendant should have seen plaintiff in a position of imminent peril much sooner. There was, however, other evidence from which the jury reasonably could have inferred that another automobile which was to the right of the Creech car [on the concrete "apron" adjacent to the south edge of the regular lanes of 47] proceeded simultaneously with the Creech car from some point west of the west edge of 61, up to 61, and turned south into 61 just as the Creech car entered the west side of 61; and that such other car may have prevented defendant from seeing the Creech car until its front was crossing the west edge of 61. We may not, therefore, declare as a matter of law that defendant saw or should have seen plaintiff sooner than the point heretofore indicated.)

If, however, we assumed that plaintiff was in a position of imminent peril as the Creech car's front started across the west edge of 61, the question of whether defendant could have thereafter acted in time was for the jury. Defendant's evidence showed: that the Creech car was then (when its front started to cross the west edge of 61 and thus more than 20 feet from the collision point) going 5–10 miles per hour; that at that time defendant was traveling 20–30 m. p. h. and was 10 to 30 feet from the collision point. Mathematically, of course, if the Creech car continued for the 20–25 feet at 10 m. p. h. it reached the collision point in about 1.5 to 1.8 seconds, and defendant's car at its slowest estimated speed of 20 m. p. h. would necessarily have been about 44 feet from the collision point when plaintiff was in a position of imminent peril. But defendant's evidence as to speeds and distances were estimates and the jury was not bound precisely to the exact estimates of the speeds of the two cars. Furthermore, defendant did not know the distance in which he could, under the conditions there, have slackened (or the amount thereof) or have stopped. Consequently, even though plaintiff's evidence showed defendant could have stopped in 43 feet including reaction time, it must be apparent from what we have said that we could not declare as a matter of law that defendant in the exercise of the highest degree of care could have slackened sufficiently, or have stopped in time, to have avoided the collision. It follows that whether defendant could have done so was a jury question.

Plaintiff contends further that the trial court erred in refusing to give instruction 4. That instruction was: "The Court instructs the jury that if you find and believe from the evidence that the Chevrolet automobile in which plaintiff, Mary C. Creech, was riding on November 9, 1953, referred to in the evidence, was caused to be stopped by the driver B. J. Creech at the stop sign located on the south side of Missouri Highway 47 and west of the intersection of Highways 47 and 61, referred to in the evidence, and you further find that the defendant Preston Blackwell was operating a Plymouth automobile north on U. S. Highway 61, referred to in the evidence, on said date, November 9, 1953, and you believe and find from the evidence that he, Preston Blackwell, had personal knowledge of the presence of the intersection of Highways 47 and 61 on and prior to said date, and that he also had personal knowledge of the

much user of the intersection for all motor vehicle traffic of Highways 47 and 61, referred to in the evidence, on and prior (to) said date, and you further find that he had personal knowledge of the blinker caution light, which was lighted, suspended over the intersection of Highways 47 and 61, referred to in the evidence, on and prior (to) said date, and you further find that B. J. Creech, the driver of the Chevrolet automobile, after making the stop at the stop sign, aforesaid, thereafter entered the intersection of Highways 47 and 61, and you further find that the defendant Preston Blackwell drove his Plymouth automobile, thereafter, into the intersection, aforesaid, and struck and crashed into the right-hand side of the Chevrolet automobile, being driven by B. J. Creech, while in the intersection, in an easterly direction in the intersection and in so doing was guilty of negligence, and if you further find that the plaintiff, Mary C. Creech, received personal injuries, if any, as a direct and proximate result of such negligence, and you further find the plaintiff, Mary C. Creech, was exercising ordinary care for her own safety while riding in the Chevrolet automobile in the intersection, referred to in the evidence, and you further find that but for such negligence on the part of the defendant, Preston Blackwell, in crashing into the Chevrolet automobile while in the intersection and the injuries to plaintiff, if any, would not have occurred, then your verdict will be in favor of plaintiff Mary C. Creech and against defendant Preston Blackwell and you will award her such damages, if any, for personal injuries as you may find and determine under Instruction No. ——."

Plaintiff contends that the foregoing instruction was a correct statement of the law, sufficiently hypothesized the essential facts, and that the trial court should have given it. Defendant contends that the trial court did not err in refusing the instruction for the reasons that a finding of the hypothesized facts by the jury would not have warranted a jury's conclusion that the defendant was guilty of primary negligence;

that under the instruction, liability was based "on the sole fact that plaintiff had preempted the intersection"; and that, as we understand, the further facts of whether defendant could have avoided the collision after he saw or should have seen plaintiff's car in the intersection, were essential facts prerequisite to plaintiff's recovery.

An analysis of instruction 4 demonstrates that it essentially hypothesizes for a jury finding these facts: that the Creech car stopped at the stop sign west of Highway 61 as it proceeded east on Highway 47 (there was no controversy in the evidence that the stop sign referred to was located 45 feet west of the west edge of 61); that the Creech car proceeded from its stopped position at the stop sign and entered the intersection; that defendant, as he proceeded northwardly on 61, knew of the presence and location of the intersection; that after the Creech car was in the intersection defendant negligently drove his automobile into the intersection and into collision with the Creech car; that plaintiff received injuries as a direct and proximate result of defendant's negligence; and that plaintiff was not proximately contributorily negligent.

 Section 304.021, subd. 1, RSMo, 1949, V.A.M.S., provides that "The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway, provided however, there is no form of traffic control at such intersection." We have noted that there was a stop sign for eastbound 47 traffic located on the south edge of 47 and 45 feet west of the west edge of 61. We are unable to find a sufficient reason for the inclusion of such a proviso in Subdivision 1 of Section 304.-021 where it seems inappropriate; nevertheless, under the language of the proviso, "no form of traffic control," we must conclude that the stop sign was *a* form of traffic control and that thus the statute was not applicable to the intersection in question. While, as noted, a Troy city ordinance pro-

vided for the erection of the stop sign, the intersection itself was not within the Troy city limits. The area of the intersection of the highways included the space common to both highways. Wilson v. Toliver, Mo., 285 S.W.2d 575, 579[1]. The space common to both highways in the instant case included the width of Highway 61 (40 feet) and the width of the two normal travel lanes of Highway 47 (20 feet).

■ Even in the absence of a statute or ordinance so requiring, it is the rule in this state that the vehicle first reaching and entering an intersection has the right of way over a vehicle subsequently reaching the intersection, provided, of course, that the driver of the vehicle first entering the intersection would be contributorily negligent if he entered when it appeared or should have appeared to him as a reasonably prudent person that to enter would probably result in a collision. That proviso, however, as will be more specifically pointed out hereinafter, has to do with the contributory negligence of the first arrival and does not pertain to or affect or obviate the primary *duty* of the second arrival to permit the first in the intersection to pass in safety. Wilson v. Toliver, supra, 285 S.W.2d 580 [5]. And we see no reason why that rule was not applicable to the facts of the instant case where there was no evidence that the stop sign and the Creech car's observance of it had any effect on the manner of defendant's approach to and entry into the intersection.

■ It must be apparent that the rule that the vehicle entering the highway intersection first has the right of way, of necessity carries with it not only the duty of the other driver approaching the intersection to respect the right of way of the first one to enter, but that implicit in the rule is the duty of such other or second driver to proceed to an intersection of highways in such manner as to permit the exercise of the first arrival's right of way without danger of collision. 5 Am.Jur., Automobiles, § 289, p. 663. And see our recent case of Cooksey v. Ace Cab Co., Mo., 289 S.W.2d 40, 45 [9].

In the Cooksey case there was no form of traffic control at the intersection there in question, so that Section 304.021, subd. 1, applied. The language of the court, however, is, we think, no less applicable to the same rule applied in the absence of a statute or ordinance, where, as in the instant case, all the evidence showed that the stop sign played no part in defendant's approach to and entry into the intersection. We said in Cooksey, 289 S.W.2d 45 [9], referring to Section 304.021, subd. 1, "Certainly, in so providing, the statute presupposed a further duty on the part of the defendant driver not to come up to and enter the intersection until he could and did see whether plaintiff's car (assuming that it approached and entered as hypothesized in Instruction No. I) had entered it. To hold otherwise would enable defendants to nullify or avoid the purpose of the statute by their own unlawful conduct."

We have held heretofore in this opinion that there was a jury issue on the question of whether defendant could have avoided the collision after he saw or should have seen plaintiff in a position of imminent peril. But that holding related, of course, to defendant's humanitarian negligence. His humanitarian negligence could not begin, i. e., the humanitarian doctrine did not come into play, until defendant saw or in the exercise of the highest degree of care should have seen plaintiff in a position of imminent peril. Defendant's primary negligence, however, permitted a consideration of defendant's prior actions in his approach to the intersection.

The decisive question, as we see it, on defendant's primary negligence as submitted by plaintiff's instruction 4 was not, as urged by defendant, whether he could have avoided the collision after he saw or should have seen the Creech car in or approaching the intersection; the question was whether there was evidence from which the jury reasonably could find that defendant violated his primary duty to so approach an intersection of highways as to

be able to permit the exercise of the right of way of another automobile which was then in the intersection.

There was no evidence in the case that the manner of approach or the speed of the Creech car was such as to make the rule of right of way relied on by plaintiff inapplicable from the standpoint of plaintiff's right to recover thereunder as opposed to defensive matters hereinafter noted. That is to say, there was no evidence that the Creech car raced into the intersection at a high rate of speed and was there first only because it outraced defendant's car across the intersection line. On the contrary plaintiff's evidence was that the Creech car proceeded from a dead stop for 45 feet to the west edge of the intersection and entered it at a speed not to exceed 8 m. p. h. Likewise, defendant's evidence was that the Creech car entered the intersection at a speed not in excess of 10 m. p. h.

■ Consider now the evidence as to the approach of defendant's car. Defendant testified (and, of course, he was bound by his own testimony) that he had a good view of the intersection and a view of the area to the west thereof from a place at least 698 feet south of the intersection and, indeed, he said that he must have seen any and all activity in and around the intersection from a place at least 1,000 feet away; that the Creech car could have been sitting at the stop sign when he was 1,000 feet away but that, in any event, he did see cars west of the intersection preparing to come onto Highway 61 when he was 100 feet south of the intersection. True, he testified he did not see the Creech car as such (i. e., as we understand his testimony, he did not see the particular automobile which he later discovered was the Creech car) until, as heretofore related, another car which apparently had proceeded simultaneously with it to the west edge of 61 had turned south on 61 and the Creech car "came right out from behind him in front of me." Defendant testified further that he at no time ap--

plied his brakes (he unsuccessfully attempted to apply his brakes immediately before impact) as he approached the intersection or changed his speed for at least the last 1,000 feet of his approach. Defendant's evidence was that his speed was 20–30 m. p. h. Neither plaintiff nor her husband driver ever saw defendant's car until the instant of impact. And there was no testimony by any of plaintiff's witnesses which was contrary to defendant's testimony as to his approach to the intersection. Consequently there were not "two or more divergent sets of essential facts, under one or more of which plaintiff would be entitled to recover and under one or more of which he would not." Hooper v. Conrad, 364 Mo. 176, 188, 260 S.W.2d 496, 500 [2]. On the contrary there was only one set of circumstances, i. e., the testimony of defendant, for the jury to consider in finding that defendant either did or did not *negligently* drive into the intersection and into collision with the Creech car after the Creech car had entered the intersection. And the evidence amply supported a finding that defendant in the exercise of the highest degree of care could have avoided the collision but for his negligence in breaching his duty to give the Creech car the right of way, i. e., in approaching the intersection in such manner as to be unable to permit the Creech car to exercise the right of way without danger of collision.

■ Further, the instruction did not improperly ignore or preclude consideration of any defensive theory supported by the evidence. The instruction negatived plaintiff's contributory negligence and it would appear that any other defensive theory, under the facts in evidence, would need to be based upon some premise other than the fact that the Creech car had entered the intersection first (the theory of the instruction) under circumstances negativing the kind of entry not contemplated by the right-of-way rule invoked by the instruction. That is not to say that defendant would not have been (in the event plaintiff's instruc-

tion 4 had been given) entitled to instructions submitting not only plaintiff's contributory negligence, but the negligence as well of the driver of the Creech car if it were hypothesized in such manner as to make inapplicable the rule of right of way relied on by plaintiff. And defendant might have been entitled to an instruction hypothesizing facts making applicable the rule of Section 304.021, subd. 2, RSMo1949, V.A.M.S., dealing with drivers approaching an intersection of highways at the same time and providing that the one on the right (defendant in the instant case) has the right of way; or an instruction making applicable the rule of right of way stated in subd. 4 of Section 304.021 dealing with the duty of one to stop before entering a through highway and yielding the right of way to one who has entered the intersection on the through highway or who is approaching the intersection so closely as to constitute an immediate hazard. All those matters, however, were defensive and not essential to plaintiff's recovery under her submitted theory of right of way. Plaintiff hypothesized the fact that the Creech car had *entered* the intersection and that defendant, knowing of the presence and location of the intersection, thereafter *negligently* drove into it and into the Creech car, under the essentially undisputed circumstances shown in evidence, and those circumstances were sufficient to permit a finding that defendant was negligent as defined in another instruction.

The only other reason assigned by defendant to sustain the trial court's action in refusing instruction 4 is that it contained the "highly objectionable," says defendant, expression, "crashed into," in describing the impact of defendant's automobile against the right front door of the Creech car. While those words could well have been omitted, still their inclusion did not make the instruction erroneous. And that such was the view of the trial court is demonstrated by the fact that essentially the same descriptive words were used in plaintiff's given instruction 1.

It is our view, therefore, that plaintiff's instruction 4 sufficiently hypothesized the essential issue, on plaintiff's submitted theory, under the evidence in the case, and that the trial court erred in refusing to give that instruction. See Cooksey v. Ace Cab Co., supra; Sommer v. St. Louis Public Service Co., Mo.App., 262 S.W.2d 335, 338, 339; Creech v. Riss & Co., Mo., 285 S.W. 2d 554, 562 [7, 8] [9].

Plaintiff also contends that the trial court erred in refusing to give plaintiff's primary negligence instruction 3. That instruction was the same as instruction 4 which we have set forth above, except that instruction 3 directed the jury that defendant *was negligent* if he drove into the intersection and into the Creech car after the Creech car had entered the intersection. We have effectively disposed of plaintiff's contention as to instruction 3 by what has been said with reference to instruction 4. We hold, therefore, that the trial court did not err in refusing to give instruction 3.

We need not and we do not rule plaintiff's further contentions that the trial court erred in giving defendant's instructions A, B, and C. We observe, however, that instruction B is subject to the criticism that it directs that defendant's negligence must have "directly caused" plaintiff's injury, rather than that it "directly caused or contributed to directly cause" plaintiff's injury. We further note that instruction C directs, with respect to defendant's duty under the humanitarian theory, that there was no duty on defendant until plaintiff was in a position of imminent peril "and until after the defendant could have known thereof," and if after plaintiff was in a position of imminent peril "and after defendant could have known thereof," defendant could not have, etc. The instruction is subject to the construction that the test applied is what the particular defendant "could have known" subject to no prescribed standard of care. The test is whether defendant saw or *in the exercise of the highest degree of care should have*

 

*seen* plaintiff in a position of imminent peril in time thereafter, etc. Finally, the word "actually" used in instruction B, "actually guilty of negligence," and twice used in instruction C, "actually in a position of imminent peril," serves no proper function. The jury had been informed as to the meaning of negligence and as to the meaning of imminent peril. The questions, in those respects, were whether defendant was negligent and whether plaintiff was in imminent peril.

For the reason that the trial court erred in refusing to give instruction 4, the case is reversed and remanded for a new trial.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.