Lee MONTGOMERY, Plaintiff-Respondent,

v.

W. R. PETRUS, Mrs. W. R. Petrus, and Oliver Otis Petrus; and John Bernard Petrus, Sr., Lyda Petrus and J. B. Petrus, Jr., d/b/a Midwest Walnut Company, a copartnership, Defendants-Appellants.

No. 7626.

Springfield Court of Appeals.

Missouri.

Nov. 5, 1957.

Robert Lamar, Cabool, for defendants-appellants.

Green & Green, Will H. D. Green, H. D. Green, Jr., West Plains, for plaintiff-respondent.

RUARK, Judge.

■ Christmas morning, 1954, opened with a bang for Lee Montgomery and Oliver Otis Petrus, caused when the front end of a Chevrolet pickup truck driven by Petrus slammed into the left front door and fender of the Montgomery Chrysler at the right-angle intersection of Ferguson and Fourth streets in Willow Springs. This appulse was brought to ultimate fruition by a judgment for plaintiff Montgomery, and defendants have appealed. The first assignment is based on the contention that plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff Montgomery approached the intersection going west on Fourth Street. Defendant Petrus was coming north on Ferguson Street. Both of the streets are blacktopped and their surface was dry. Estimates of the width of the intersection vary from 35 to 40 feet, as given by plaintiff, to testimony of defendants' witness (a highway patrolman) that Fourth Street (evidently the blacktopped portion) was 23 feet wide and that the Ferguson payment was 23 feet wide south of the intersection and 30 feet wide north of it. A stop sign was planted on the north side of Fourth Street four to six feet east of Ferguson Street, thus repelling traffic approaching from Montgomery's direction. At the southeast corner of the intersection (on the left of plaintiff Montgomery and to the right of defendant Petrus's line of travel) was a wooden paling fence, presumably on the property line, and both north and west of this were a few trees with branches above the vision line but whose trunks would, to some extent, obstruct vision. Fourth Street and the intersection itself are approximately level, but Ferguson runs upgrade to the north (defendant's course of travel), so much so, as the *defendant* testified, that there is "a pretty steep hill" which extends from the intersection down and south 50 to 75 feet, and steep enough that the vision of a person coming up from the south is obstructed "by the hill itself" and "you [would] have to be probably half-way up that little hill" to see a car standing at the stop sign on Fourth Street.

On this chilly morning Montgomery came from the east, stopped his car with the front wheels at about the stop sign, and looked down the street. His engine died. He started it up, looked both to the south and to the north, said he saw no approaching vehicle, and started across the intersection at about five miles per hour. When he got about halfway across he saw, for the first time, defendant's truck coming up from the south about 50 feet away and at a speed which he estimates at 40 to 50 miles per hour. His Chrysler got a little farther on, or about two-thirds of the way across the intersection, when the impact occurred, this somewhere in the northwest quadrant of the intersection. Defendants' witness, the highway patrolman, puts the point of impact just north of the center line and four or five feet to the west. Plaintiff's testimony, when taken in conjunction with his exhibits, would put it a little farther west. Defendant left skid marks 20 feet in length leading straight back south in the west lane of Ferguson Street.

Defendant testified that he entered Ferguson Street two blocks south; that he didn't see Montgomery until "I was just topping the hill," which he said "ends right at the intersection." At this time Montgomery was moving very slowly across the intersection. Defendant further testified that he was traveling at about 25 miles per hour and *"I was gaining speed going up Ferguson."*

■ There are at least two reasons why defendants' contention in regard to contributory negligence as a matter of law must fail.

First: We recognize and agree with the principle stated by the defendants that when one is under a duty to look he is charged with having seen what he could have seen.[1] But here we have the factor of at least partial obstruction to vision at the point where plaintiff necessarily stopped before his entry upon the intersection, coupled with the falling incline to the south, which may also have affected the visibility. Defendant himself supports this by his statement that, because of the hill, there was a space on the way up Ferguson in which he could not have seen a car standing before the intersection. What is sauce for the goose is the same for the gander. The jury would have a right to infer that if defendant could not see plaintiff's car, plaintiff could not see defendant's truck.[2] And while it is true that plaintiff would have been charged with seeing what he could have seen, the law would not require him to have seen what, by the exercise of the highest degree of care, he could not have seen.[3] Thus, having come up to the intersection and having stopped (and, as he said, killed his engine), and having looked to the south (as he said he did) and not seeing any approaching vehicle, he had the right to proceed.

■■■ Second: Ignoring the question of visibility, there is yet another reason why defendant's challenge must fail. The speeds and distances as related in the evidence, as in a great many cases, are somewhat at variance and elastic. We cannot hold the parties to exactly correct estimates.[4] And where there are several and different speeds and distances from which the jury has to choose, the plaintiff is entitled to the happiest (from his standpoint) and most favorable combination of facts which can be picked or inferred from the whole evidence, just so long as they do not conflict with plaintiff's basic theory of the case or with his own judicial admissions.[5]

■■ In this case a not unreasonable interpretation of the fact of plaintiff's speed (five miles per hour), plus the computed distance which he traveled from the place where he stopped to the point of impact, as against the speed of the defendant (up to 50 miles per hour) would or could by computation place defendant's truck some 360 feet or more south of the intersection at the time plaintiff started to cross the intersection. If we accept defendant's estimate of his own speed (and ignore the fact that his speed was increasing) it would be half that distance. If we charge plaintiff with having *seen* defendant's truck 360 feet south, going 50 miles per hour and heading uphill, or at 180 feet south, going 25 miles per hour and coming uphill, it would be a question concerning which reasonable minds could disagree as to whether plaintiff was guilty of contributory negligence in starting across the intersection. Especially is this true when we consider (a) the fact that defendant was *increasing* his speed as he came up Ferguson, and therefore the speed by which plaintiff could have judged him when plaintiff started across the intersection, was not the same speed at which defendant struck the intersection; and (b) at the time of the impact the plaintiff had sufficiently crossed the intersection so that, had defendant adhered to his own right (east) side of the road, the collision might not have occurred. We hesitate to attempt any pronouncement as to just when one may, with

1. Douglas v. Whitledge, Mo.App., 302 S.W. 2d 294; Roux v. Pettus, Mo.App., 293 S.W.2d 144; State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915; Becker v. Clemons, Mo. App., 295 S.W.2d 203.

2. Cooksey v. Ace Cab Co., Mo., 289 S.W. 2d 40; Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 76.

3. 60 C.J.S. Motor Vehicles § 353a, p. 838; Fuzzell v. Williams, Mo.App., 288 S.W.2d 372.

4. Caffey v. St. Louis-San Francisco Railway Co., Mo.App., 292 S.W.2d 611, 617.

5. Williams v. Ricklemann, Mo., 292 S.W.2d 276, 280.

out negligence, enter an intersection which another vehicle is approaching at right angles. Certainly the right of the vehicle first on the scene is not absolute.[6] The right to enter depends, of course, upon the circumstances peculiar to each case. These circumstances include, among others, the surroundings at the intersection, the condition of the road and the intersection, the relative speeds of the two vehicles, and the relative distance of each vehicle from the intersection. They might also include indications of intention on the part of the driver of the approaching vehicle, as well as reasonable assumptions to be drawn from the whole circumstances. All these things must be considered in relation to each other. But one about to enter an intersection usually has the right to act upon appearances and, unless there is reasonable indication to the contrary, to assume that the driver of any other approaching vehicle will not act negligently and will operate his vehicle in a prudent and lawful manner.[7] The facts in Moore v. Southwestern Bell Telephone Company, Mo., 301 S.W.2d 817, are similar in many respects to the situation here at hand. There it was held that the question of contributory negligence was one concerning which reasonable minds might disagree and therefore a jury question. We are of the opinion that it was a jury question in this case

■ The remaining assignments deal with claims of error in regard to the giving of plaintiff's verdict-directing instruction, No. 2, which told the jury in substance: If plaintiff was driving his car west on Fourth * * * and if he stopped before entering upon the intersection and then proceeded * * * and that at that time the Petrus pickup was traveling north

on Ferguson but was not entering the intersection nor approaching such intersection so closely as to constitute an immediate hazard * * * and that when plaintiff reached the west lane of the intersection the pickup entered such intersection and collided with plaintiff * * * and that at the time of and immediately prior to such collision Petrus negligently failed to have his truck under control and negligently operated it on the left side of Ferguson Street, if so, and that Petrus negligently failed to keep a vigilant lookout, if so, and if as a direct and proximate result of such negligent acts the collision occurred, etc.

The first two complaints against the instruction are that (a) it does not properly hypothesize facts in evidence, and (b) it submits issues not within the scope of the petition and concerning facts not in the record.

The petition charged, *inter alia,* primary negligence in failure to keep the truck under control, in negligently operating it upon the left side of the road, and in failing to keep a lookout. Neither in the points and authorities nor in the argument is any reference made to how or in what manner or in reference to what facts there is an "improper" hypothesization, *what facts* were hypothesized which were not supported by evidence, or *what issues* were improperly submitted. We have examined the instruction in the light of the petition and evidence, and it appears to us that it properly and fairly submitted the issue of primary negligence. Perhaps if the appellants had seen fit to point out to us what facts and issues their complaint concerned we might have discerned some error, but, lacking this, we see none. It is our opinion

6. James v. Berry, Mo.App., 301 S.W.2d 530; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575; see Folluo v. Gray, Mo. App., 256 S.W.2d 273, 276.

7. Cooksey v. Ace Cab Co., Mo., 289 S.W. 2d 40; Ritzheimer v. Marshall, Mo.App., 168 S.W.2d 159; Rayburn v. Fricke, Mo. App., 243 S.W.2d 768; Burke v. Renick, Mo.App., 249 S.W.2d 513; Moore v. Southwestern Bell Telephone Company, Mo., 301 S.W.2d 817.

that the appellants blindly fired a shotgun in the dark in the hope that we would search out and find a target for them. This we are not required to do.[8]

■ The next assignment is that Instruction No. 2 "squarely contradicts the allegations in paragraph 5 of Count 1 of plaintiff's * * * petition." Paragraph 5 is a charge of humanitarian negligence in the usual words. It is not pointed out how or why the instruction is necessarily contradictory of the humanitarian charge. Nor do we know of any reason why plaintiff could not, as he did, abandon the humanitarian charge and submit on the specifications of primary negligence, which he did.

■ The remainder of appellants' complaints deal with the failure of the instruction to take into account and negative the issue of contributory negligence. The defendant secured the giving on his behalf of three instructions which seem to have substantially covered all of his contentions in regard to this affirmative defense. Assuming that there was substantial evidence from which contributory negligence might have been found, the giving of plaintiff's main instruction which ignored it was neither an omission of an essential element of plaintiff's case nor a misdirection, and any error in the plaintiff's instructions in that regard was cured by the giving of defendant's instructions.[9]

The judgment is affirmed.

McDOWELL, P. J., and STONE, J., concur.

---

8. Gelhot v. City of Excelsior Springs, Mo. App., 277 S.W.2d 650, 657; Haley v. Edwards, Mo., 276 S.W.2d 153; Vandeventer v. Shields, Mo.App., 241 S.W.2d 53, 60; Martin v. Ficklin, 240 Mo.App. 1225, 227 S.W.2d 69, 77; Kennedy v. Hartwig-Dischinger Realty Co., Mo.App., 201 S.W.2d 475, 480; Cooksey v. Ace Cab Co., Mo., 289 S.W.2d 40, 44.

9. Griffith v. Delico Meat Products Co., 347 Mo. 28, 145 S.W.2d 431; Clark v. Howard, Mo.App., 273 S.W.2d 771, 775; Long v. F. W. Woolworth Co., Mo., 159 S.W.2d 619; Ketcham v. Thomas, Mo., 283 S.W.2d 642, 647; Sanders v. Illinois Cent. R. Co., 364 Mo. 1010, 270 S.W.2d 731; De Winter v. Lashley, Mo.App., 274 S.W.2d 40, 43; Smith v. Gately Stores, Mo.App., 24 S.W.2d 200, 202.