**Janie Marie HAYMES, Plaintiff-Respondent,**

v.

**Hilda R. SWAN, Defendant-Appellant.**

No. 8558.

Springfield Court of Appeals.

Missouri.

March 1, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied March 28, 1967.

———————

Church & Jones, Donald W. Jones, Lindell R. Church, Springfield, for plaintiff-respondent.

Allen, Woolsey & Fisher, Raymond E. Whiteaker, Russell G. Clark, Springfield, for defendant-appellant.

TITUS, Judge.

Plaintiff Janie Marie Haymes sued defendant Hilda R. Swan in the Greene County Circuit Court for damages allegedly sustained because of an encounter of the parties at the intersection of Kellett and High Streets in Springfield, Missouri, near 1:30 p. m., May 24, 1965. Defendant counterclaimed. The jury, in the form suggested by MAI 32.03, returned a $5,000 verdict for plaintiff. Defendant's motion to the trial court for judgment in accordance with her trial motions for directed verdict or for a new trial as to all issues was overruled. Defendant has appealed.

No traffic control signs or signals were present at the intersection of the two streets, each measuring 30 feet from curb to curb. Kellett Street, running north and *south*, is paved and intersects at right angles High Street which travels east and west. High Street is graveled. Pictorial evidence indicates the weather was clear and the road surfaces dry when the collision occurred. Contrary to her deposition testimony (more to be said of this later) plaintiff testified a low hedge obstructed her view at the intersection. The location of the hedge is not shown in the record but we assume it is at or near the northwest corner of the intersection.

Plaintiff was driving a Chevrolet station wagon south on Kellett and defendant was operating her Pontiac Tempest east on High when the front of the Pontiac collided with the right "two doors" of the Chevrolet. An investigating police officer located dirt and debris caused by the impact in the intersection "approximately 20 feet south of the north curbline on High [and] approximately 8 feet east of the west curbline of Kellett." No tire or skidmarks were observed. After impact the Chevrolet stopped wheels up, headed south near the east curb of Kellett, with the rear of the vehicle 50 or 60 feet south of the intersection. Without upsetting, the Pontiac came to rest 20 or 25 feet south of the intersection headed northwest with its rear wheels onto the east parkway.

Accompanied by her daughter who was sitting with her back to the right front door facing her mother, plaintiff testified she was operating the Chevrolet 25 miles per hour while driving south on Kellett. "One or two car lengths from High, the intersection," she slowed to 20 miles an hour. "I looked to the right and to the left and I didn't see anything. And I proceeded on through the intersection about twenty miles an hour and just before I left the intersection, I felt an impact and that's all I know." The daughter who likewise never saw the Pontiac, asserted plaintiff was driving 20 miles an hour, "slowed down about a car length and a half from High and looked to her right and to her left and went on through." This witness agreed "it's a pretty open intersection."

Plaintiff had testified in her deposition "it is a clear, open intersection," there is

not "anything to obstruct westward vision," and that she could see west down High Street "at least two blocks." Responding to a deposition query if she looked but once to her right before driving into the intersection, plaintiff said, "I tell you, I made the second look then * * * probably [at] the middle of the intersection." Attesting she was "wrong" and "confused" when she deposed, at the trial plaintiff testified "I'm not going to say I looked [to the right] the second time." Plaintiff told the jury that a week before trial she had revisited the scene and seated in an automobile placed the length of two cars north of the intersection on Kellett, she made observations of another vehicle which was headed east and placed in the center of High Street west of the intersection. When the latter vehicle was entirely visible to plaintiff, measurements disclosed its front end was ninety-six and one-half feet west of the intersection. Plaintiff was familiar with the accident scene by reason of having traveled the route she was taking on the day of the accident for fourteen years.

Defendant said she was driving east on High 20 to 25 miles per hour but slowed to 15 or 20 upon nearing the intersection. Admitting she is "not a very good guesser," defendant testified as she was just coming up to the intersection she looked left (north on Kellett) and then to her right and saw no approaching traffic. "Then when I looked back to the left I saw this blue station wagon coming at a very high rate of speed * * * just roughly sixty miles an hour." The Pontiac, according to defendant, was into the intersection "by the time this station wagon ran in front of me." Her "first impulse [was] to put on my brakes [but] I didn't have time to do anything. * * * I put my foot on the brake but how far I got it, I don't know." Answering written interrogatories, defendant had said ten feet separated the two vehicles when she first saw the Chevrolet, that she had applied her brakes and the

Pontiac had slid or skidded prior to the moment of impact.

A woman who did not witness the actual impact said she observed the station wagon "come up the street * * * and I seen a lot of dust comin' on High Street." The last she saw of the Chevrolet it was "halfway in the intersection" traveling at a "slow rate [of speed], I would say. * * * I just heard a sound of a car comin' up High fast and the dust blowin'." Another witness did not see the pre-impact developments but noticed the cars just as they collided. "It looked like the blue car [Chevrolet] was almost through the intersection from where I was sittin' [and] there was quite a bit of dust on High Street back west, on west from where the crash were."

A police lieutenant testified for plaintiff as a reconstruction expert and his opinions and conclusions are noted in full by us simply because they encountered no objections from defendant. The lieutenant stated the Chevrolet outweighed the Pontiac by one thousand pounds and had the Pontiac been traveling at a slower speed than the Chevrolet when it struck the station wagon broadside, the Pontiac would "have been flipped back to the right side of the Chevrolet * * * in other words on the west side of Kellett Street * * *. In this case, instead of following this pattern * * * there was still enough inertia left [in the Pontiac] that it swung completely around, back up over the parkway and followed the Chevrolet * * * about 25 feet." Assuming the Chevrolet was going 20 miles an hour and the Pontiac 35 to 45 miles an hour at impact, the witness concluded, without objection, the Pontiac "would have landed up where it did in this particular case." His reconstruction of the accident indicated to the lieutenant the Chevrolet "was going at a relatively low rate of speed" when the collision occurred.

A car being driven 20 miles per hour, the lieutenant testified, would travel approximately 30 feet per second and would require one and three-fourths seconds to

travel 50 feet. In the same one and three-fourths seconds a vehicle would have to travel 37 to 38 miles per hour to cover 90 to 100 feet. Concerning "how long are cars," the witness conceded, "Some of them can be 15, some of them can be 16, some of them can be 20 feet." In an experiment conducted by this officer at plaintiff's behest, he placed himself in an automobile facing south on Kellett. When the front of the car was 30 feet north of the intersection he could see west along the curbing of High Street a distance of "approximately 95 feet." Moving the front of the car to within 20 feet of the intersection, his sight distance was increased to "approximately 100 to 110 feet." When asked: "One to two car lengths north of the curbline, how far down High Street can you see?" the lieutenant answered "approximately 95 feet."

There was no evidence as to the stopping distance requirements of either vehicle at any given speed. Subsections (a) and (b) of Section 22–63 of the General Ordinances of the City of Springfield, as read into evidence, are practically identical to subsections 1 and 2 of V.A.M.S. § 304.021, and have to do with intersection rights of way.

 Defendant contends she was entitled to a directed verdict on plaintiff's claim because (1) plaintiff was guilty of contributory negligence as a matter of law in failing to maintain a proper lookout, and (2) defendant's negligence, if any, was not the direct and proximate cause of the accident. In attending to our review of these claims by defendant where plaintiff has been successful with the jury, we must inspect the evidence in the light most favorable to plaintiff, augmented by the best inferences reflected therefrom. Except where it may aid plaintiff, defendant's evidence is ignored. Dressler v. Louvier, Mo. (Banc), 408 S.W.2d 852, 853–854(1); Price v. Seidler, Mo., 408 S.W.2d 815, 819(1); Thomas v. Jones, Mo., 409 S.W.2d 131, 134(2). Even if reasonable minds might conclude both plaintiff and defendant were at fault in producing the collision, as the record here suggests, yet we are not at liberty to hold plaintiff guilty of contributory negligence as a matter of law unless the evidence and inferences favorable to plaintiff's submission permit no other reasonable conclusion. Otherwise, plaintiff's contributory negligence is a jury question. Bischoff v. Dodson, Mo. App., 405 S.W.2d 514, 517 (2,3).

 To support her claim plaintiff was contributorily negligent as a matter of law in failing to maintain a proper lookout, defendant cites six cases.[1] All authorities to which we are referred repeat well-established precepts that "where one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed," and "the failure on the part of a plaintiff, where a duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law." We cannot say the cited or similar cases aid defendant's case, for in cases ruling plaintiff guilty of contributory negligence as a matter of law in failing to see defendant, there was cogent evidence defendant was actually visible when plaintiff looked or that defendant could have been seen had plaintiff looked, or there was uncontradicted, precise evidence of distances and speeds from which calculations disclosed with certainty defendant was, in fact, within plaintiff's range of vision (e. g., Bracken v. Koch, Mo.App., 404 S.W.2d 201, 203). The jury was not obliged to accept defendant's testimony her speed was 15 to 20 miles an hour and was free, under the testimony in this case, to deter-

---

1. Major v. Davenport, Mo.App., 306 S.W. 2d 626; Douglas v. Whitledge, Mo.App., 302 S.W.2d 294; Roux v. Pettus, Mo. App., 293 S.W.2d 144; James v. Berry, Mo.App., 301 S.W.2d 530; Ely v. Parsons, Mo.App., 399 S.W.2d 613; Branscum v. Glaser, Mo., 234 S.W.2d 626. Branscum, unlike the instant matter, was submitted on humanitarian negligence.

mine she was traveling at the greater rates of speed indicated by the evidence. Without repeating our own adventures in arithmetic, which any interested reader may undertake if so inclined, we cannot say defendant's vehicle was actually visible or within the range of plaintiff's vision when she looked right onto High when the Chevrolet was one or two car lengths north of the intersection. The jury had the right to believe plaintiff was "wrong" or "confused" in her deposition testimony and that her sight distance west on High from where she looked was 96 to 110 feet instead of two blocks. Cox v. Moore, Mo.App., 394 S.W.2d 65, 67(1); Douglas v. Farrow, Mo., 334 S.W.2d 234, 238(1). This does not imply plaintiff was excused from maintaining a lookout ahead and laterally as she approached the intersection. Unfortunately, especially in this motor vehicle age, Homo sapiens are not constructed to permit simultaneous looks in opposite directions and plaintiff was under no duty to maintain a constant look laterally ahead to the right. Pitts v. Garner, Mo., 321 S.W.2d 509, 517–518(9). Her failure to continuously look only to her right and observe what such single-direction looking would reveal, does not constitute negligence as a matter of law. Slaughter v. Myers, Mo., 335 S.W.2d 50, 54(6). It also is subject to jury determination whether plaintiff was negligent in failing to look to her right a second time before entering this intersection. Combellick v. Rooks, Mo.(Banc), 401 S.W.2d 460, 463(5). We decline to rule plaintiff was contributorily negligent as a matter of law in failing to maintain a proper lookout.

▮▮▮▮ Defendant's additional contention she was entitled to a directed verdict because of the lack of evidence showing her negligence to be the direct and proximate cause of the accident, is allegedly supported by cited cases[2] which

involve lookout failure, failure to warn in a humanitarian situation, and whether burn injuries suffered by a youth of tender years naturally and probably resulted from defendant's sale of gasoline to a twelve year old boy. Ere failure to keep a lookout or to warn can be the proximate cause of a casualty, an additional showing must be made that defendant possessed the ability and time to discharge the positive duty to avert or avoid. The absolute duty imposed upon a defendant by ordinance or statute to yield the right of way is negative in character. The only issue of defendant's negligence submitted to the jury on plaintiff's claim was defendant's alleged failure to yield the right of way. If plaintiff's car was the first to reach and enter the intersection, it then became defendant's duty *not* to enter, and if the collision resulted from defendant's breach of this negative duty, such facts alone establish a basis for recovery. Harrellson v. Barks, Mo.App., 326 S.W.2d 351, 362–363(17–19) and cases there cited. Whether or not plaintiff was contributorily negligent in entering the intersection at a time when it appeared or should have appeared to a reasonably prudent person that to do so would probably result in an accident would not obviate the primary duty of defendant to permit plaintiff, first into the intersection, to pass in safety. Creech v. Blackwell, Mo., 298 S.W.2d 394, 400(5). We cannot consider as sound defendant's argument her negligence was not the cause of the accident as a matter of law simply because she had no ability (or because the evidence revealed no ability) to avoid the accident because of the speed of the Pontiac and her failure to see plaintiff until an instant before impact. "Certainly the fact that one who by statute is to yield the right of way approaches and enters the intersection at a speed which prevents him from observing the mandate of the statute, does not constitute a sub-

---

2. Bracken v. Koch, Mo.App., 404 S.W.2d 201; Zalle v. Underwood, Mo., 372 S.W. 2d 98; Thaller v. Skinner and Kennedy Company, Mo.App., 307 S.W.2d 734; Vietmeier v. Voss, Mo., 246 S.W.2d 785; and Tharp v. Monsees, Mo., 327 S.W.2d 889.

missible circumstance to support a finding of valid excuse for nonobservance." Lay v. McGrane, Mo., 331 S.W.2d 592, 599–600(9, 10) ; Highfill v. Maier, Mo. App., 379 S.W.2d 191, 193–194(4, 5).

■ Especial note should be taken the foregoing has resulted because, as in our duty, we have indulged plaintiff with the evidence and inferences most pleasing to her cause. In considering defendant's assignment of trial court error instructing the jury, plaintiff is not entitled to such pampering. Specifically defendant asserts the trial court erred by giving instruction numbered 9 without requiring the jury to find plaintiff was exercising due care at the time and because the instruction, when read with the others, was confusing and misleading.

MAI 14.02 (which is the same as instruction number 9, except the instruction as given omits the bracketed clause) reads:

"The phrase 'right of way' as used in these instructions, means the right of one vehicle to proceed ahead of the other.

"When two vehicles do not reach an intersection at approximately the same time, the vehicle which enters the intersection first has the right of way [provided a very careful person would so proceed under the same or similar circumstances]."

Notes on Use, following this instruction, state: "The bracketed clause *must* be added where there is evidence that the party entitled to the right of way failed to use such care. * * * This definition will also be appropriate where city ordinances give the same right of way at intersecting streets * * *." In the section devoted to "How to Use This Book" (MAI XXXI–XXXV) we are specifically admonished, l. c. XXXIV, "The notes on use following each instruction dictate the circumstances under which the instruction may be used. *These must be followed."* Kratzer v. King, Mo., 401 S.W. 2d 405, 408. V.A.M.R. 70.01 requires: "* * * (b) Whenever Missouri Approved Instructions contains an instruction

applicable in a particular case which the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other on the same subject. (c) *The giving of an instruction in violation of the provisions of this rule shall constitute error,* its prejudicial effect to be judicially determined." (All emphasis ours).

Plaintiff's instruction on her claim (MAI 17.01 and 17.08), as previously noted, submitted only defendant's averred failure to yield the right of way. Defendant's instruction on contributory negligence (MAI 28.01) submitted plaintiff's alleged failure to yield the right of way and her failure to keep a careful lookout. At defendant's request instruction number 10 (MAI 14.03) was given, as follows:

"The phrase 'right of way,' as used in these instructions, means the right of one vehicle to proceed ahead of the other.

"When two vehicles reach an intersection at approximately the same time the vehicle on the right has the right of way provided a very careful person would so proceed under the same or similar circumstances."

(The Notes on Use under MAI 14.03 are the same as those under MAI 14.02, previously stated, as they relate to the bracketed clause).

■ Even though it is said plaintiff, if she reached the intersection first, had a superior right to cross the intersection, this right and the right to assume defendant would yield the right of way is not absolute. Plaintiff was still subject to the basic commandment to use and exercise the highest degree of care and to drive the Chevrolet at such rate of speed so as not to endanger the property of another or the life or limb of any person. V.A.M.S. § 304.010; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 583(14). The right of way "does not give an absolute and unqualified right to proceed regardless of then existing circumstances and conditions, although many motorists apparently

entertain that mistaken notion." James v. Berry, supra, Mo.App., 301 S.W.2d at 533 (3); Douglas v. Whitledge, supra, Mo. App., 302 S.W.2d at 298–299(4). Neither does the fact plaintiff entered the intersection first nor the right of way statute excuse the duty of maintaining a proper lookout while approaching an intersection. Dixon v. Kinker, Mo.App., 410 S.W.2d 347, 351(5); Lamfers v. Licklider, Mo., 332 S.W.2d 882, 887–888(3) The right to enter depends on many circumstances and is governed by the facts peculiar to each case. Montgomery v. Petrus, Mo.App., 307 S.W.2d 24, 28.

While the jury was at liberty to believe none, part, or all of the testimony of any witness (Mayer v. Orf, Mo., 404 S.W.2d 733, 734–735 (3, 4), our instant concern is not with what the jury believed or disbelieved but whether there was evidence plaintiff failed to use the care of a very careful person in proceeding to command the right of way. Notes on Use, MAI 14.02, supra. There was evidence defendant was driving 20 to 25 miles an hour but slowed to 15 or 20 as she neared the intersection. Acceptance of such testimony would place the Pontiac within plaintiff's range of vision when she looked west down High, even assuming plaintiff could see to her right but 95 to 110 feet. There was evidence by plaintiff's daughter it was "a pretty open intersection" and plaintiff's own deposition testimony she could see west on High without obstruction for "at least two blocks" when she looked in that direction before entering the intersection. In either event and whether defendant's evidence or the police lieutenant's surmise as to the Pontiac's speed be accepted, "the fact that plaintiff reached and entered the [intersection] first would not justify her in attempting to cross in front of defendant's [car] if by the exercise of the highest degree of care she saw or could have seen that to do so would bring their vehicles in danger of collision." Cooksey v. Ace Cab Company, Mo., 289 S.W.2d 40, 44(2). While it is true, as we have said, it was for the jury to decide whether plaintiff's failure to look right a second time constituted negligence, nevertheless such failure was evidence of negligence even though not negligence as a matter of law. Without detailing all other facets of the testimony that could be recited in this regard, we rule there was evidence which would permit reasonable minds to conclude plaintiff was not exercising the care of a very careful person by proceeding into the intersection as she did under the circumstances in this case. For that reason it was error to omit the bracketed portion required by MAI 14.-02 from instruction number 9. V.A.M.R. 70.01(c), supra.

Plaintiff urges that even if the omission of the bracketed clause from instruction 9 be error, it was not prejudicial error. With this we cannot agree. The gist of instructions 9 and 10 was to charge the jury that the vehicle which enters the intersection first has the right of way, whereas it is only when a very careful person would proceed into an intersection under existing circumstances that the vehicle on the right is to be given the right of way. The facts indicate plaintiff reached the intersection first, even though but a second or fraction of a second before defendant. It appears to us instruction number 9 (especially when read in connection with instruction number 10) had the effect of informing the jury the first vehicle to enter the intersection invariably and unqualifiedly has the right of way provided the automobiles do not arrive at the intersection at approximately the same time. "While the instruction does not in express terms direct a verdict for the [plaintiff], its effect is that under the stated facts nothing else would follow." McCombs v. Ellsberry, 337 Mo. 491, 85 S.W. 2d 135, 140(14); cf., Anthony v. Jennings, Mo.App., 368 S.W.2d 533, 538(9). Undoubtedly the learned trial judge doubted plaintiff was entirely free from negligence and was exercising the highest degree of care by undertaking to preempt the intersection under the existing conditions and evidence; else he would not have been

justified in instructing the jury on plaintiff's failure to yield the right of way or to keep a lookout. Hawkeye-Security Ins. Co. v. Thomas Grain Fum. Co., Mo.App., 407 S. W.2d 622, 625(2).

■ Left turn rights of way as governed by subsections 3 and 6, V.A.M.S. § 304.021, were subjects involved in George v. Wheeler, Mo.App., 404 S.W.2d 426. MAI 14.07 (modified) was given without the bracketed part and when defendant won a verdict the trial court granted plaintiff a new trial because of the omission. In holding the omission was not prejudicial *to plaintiff,* the appellate court notes the instruction pertains *to plaintiff's contributory* negligence and it was not necessary the instruction require the jury to find defendant was entirely free of negligence and acted only as a very careful person because claimed contributory negligence on plaintiff's part presupposes defendant's negligence. This, of course, is not the situation we have or with which the jury was presented. If plaintiff is to be permitted to recover, the jury should be instructed and must believe plaintiff was acting as a very careful person would act under the circumstances when she proceeded into the intersection. Cf., Ross v. Wilson, 236 Mo.App. 1178, 163 S.W.2d 342, 346–347(5, 6) ; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 979–980(10). The trial court's omission of the bracketed portion of MAI 14.02 from instruction number 9 was error prejudicial to defendant and her motion for a new trial on all issues should have been sustained.

The case is reversed and remanded.

STONE, P. J., and HOGAN, J., concur.