Sandra Foote STANFORD, Appellant,

v.

Richard MORGAN, M.D., Defendant.

No. KCD 30077.

Missouri Court of Appeals,
Western District.

Sept. 4, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1979.

Application to Transfer Denied Nov. 14, 1979.

**90**

Charles C. Shafer, Jr., Herman M. Shaffer, George S. Murray, III, Kansas City, for appellant.

Larry L. McMullen, D. Brook Bartlett, Kansas City, for defendant.

Before HIGGINS, Special Judge Presiding, SWOFFORD, C. J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal by plaintiff from judgment on verdict for defendant in medical malpractice action premised on failure of informed consent. The questions are: whether the court should have defined "negligent"; whether plaintiff was entitled to show defendant's malpractice insurance coverage; whether plaintiff was entitled to testimony of an undisclosed psychologist; whether a defense expert witness should have been barred under the witness exclusion rule; whether the trial court abused its discretion in conduct of chambers proceedings with respect to recesses and hours of court; whether the verdict was against the weight of the evidence; whether the court abused its discretion in connection with defendant's use of an article on informed consent in cross-examination of a witness, and comment on plaintiff's failure to call her psychologist as a witness. Affirmed.

Plaintiff's action was cast in three counts: (1) Medical Malpractice, (2) Wrong Diagnosis, and (3) Failure of Informed Consent. Upon conclusion of her evidence, she dismissed Counts 1 and 2. Upon conclusion of all evidence she submitted her case by Instruction No. 3 in form MAI 21.01, which directed a verdict for her if the jury believed that defendant "failed to disclose all material risks of the operation", and "was thereby negligent", and "as a direct result * * * sustained damage". This was conversed by Instruction No. 4 in form MAI 33.02(2), which directed a verdict for defendant if the jury did not believe "that defendant was negligent". The court also gave Instruction No. 5 in form MAI 11.06, which defined "negligence" as "the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession".

Sandy Foote, at about age 7, sustained surgical removal of her spleen with resultant oblique scar and stitch marks from between her breasts down to the left of her navel.

On March 4, 1974, at age 25, she consulted Richard Morgan, M.D., about removal of her stitch marks. She also had hereditary "dimpling" on both thighs caused by excess fatty deposits which was also discussed. Miss Foote inquired about corrective exercise. Dr. Morgan indicated the ineffectiveness of exercises, and described an operation known as "thigh lift", available as elective surgery in the treatment of fatty thigh problems.

Miss Foote and Dr. Morgan discussed these matters on a second office appointment March 16, 1974, and it was agreed that Dr. Morgan would operate both conditions March 21, 1974.

The surgery was performed as scheduled, and Miss Foote was released from the hospital March 28, 1974.

Miss Foote felt she had a bad result with red, painful, itchy scars, wider than before in repair of the stitchwork, and limitations on her work and quality of life. Her evidence on result was to that effect; the doctor's evidence was that the result was within acceptable standards.

The issue of warnings for purposes of informed consent was equally contested. Miss Foote maintained she had not been warned of the risks of pain, scarring and limitations; Dr. Morgan insisted he gave warnings sufficient to enable his patient to make an informed consent to the surgery performed. Both sides introduced expert testimony on standards of informed consent.

■ Appellant charges the court erred (1) "in giving Instruction Nos. 3, 4 and 5 without defining both of the terms 'negligent' and 'negligence'. New instruction (MAI 11.06) requires both definitions now, but MAI 21.01 does not". She argues that the instructions were thus confusing "and accordingly became prejudicial".

This case was tried in November, 1977 and Instructions 3, 4 and 5 were in the form mandated for use, prior to January 1, 1978. The revision of 11.06 which required reference to and definitions of both "negligent" and "negligence" was ordered by the Supreme Court May 23, 1977, effective January 1, 1978. Nothing in the order required use of revised MAI 11.06 prior to January 1, 1978; nor was there anything in the order prohibiting use of revised MAI 11.06 prior to the effective date. To the contrary, their use prior to that date was not presumptive error. MAI, 1978 Pocket Part, XVI. Plaintiff could have asked for the definition available through revised MAI 11.06 in which case both "negligent" and "negligence" would have been given the single and same definition as that in Instruction No. 5.

■ Appellant charges the court erred (2) in refusal of plaintiff's request and offer of proof to the jury, through questions to defendant of defendant's malpractice insurance coverage. She argues that "the real defendant is the insurance company who was paid for taking the defendant's risks and then hides behind the fictitious shield to lines of inquiry not enjoyed by other parties"; and that by precluding such testimony a jury is allowed to speculate whether a damage award might bankrupt defendant. Plaintiff was thus unconstitutionally denied a fair trial of all issues and evidence.

Appellant's desire to examine defendant does not appear relevant to any issue in this case, and rejection of the offer of proof was proper. "Only in rare cases and where relevancy is clearly shown should the fact of the existence of insurance coverage be admissible". *Stafford v. Far-Go Van Lines, Inc.*, 485 S.W.2d 481, 493 (Mo.App.1972). See also *Means v. Sears, Roebuck & Co.*, 550 S.W.2d 780, 787 (banc 1977).

■ Appellant charges the court erred (3) "in refusing to permit plaintiff an opportunity to produce her psychologist or testify fully in regard thereto; by holding psychologist to be a member of the healing arts where it was not true; by refusing plaintiff's requests to amend interrogatories, to continue the case, to delay for one-half day, and abused plaintiff further by misapplying Civil rule 56.01(e) (on duty to supplement answers to interrogatories) and by refusing dismissal of the petition with-

out prejudice and finally permitting only limited inquiry of plaintiff as to her visits with psychologist; such rulings * * * evidencing an abuse of discretion which was erroneous since it denied jury of all pertinent evidence and was prejudicial to plaintiff's right to fair and impartial trial."

The record shows that plaintiff never requested permission to call the psychologist as a witness, counsel stated he did not intend to call the psychologist, and the motion for new trial contains no allegation that the court erred in preventing her from calling her psychologist. The record also shows that plaintiff was permitted to testify about her psychologist to the extent requested by counsel. Plaintiff's first reference to consultation with a psychologist occurred during her re-direct examination on the second day of trial. Prior to such incident, she had failed to furnish his name in response to an interrogatory requesting names of all doctors who had treated her for injuries claimed, when responding to an interrogatory requesting information on any illness, sickness or disease before and after her operations by Dr. Morgan, when responding to an interrogatory requesting name of any psychiatrist or psychologist who had been consulted for mental, emotional or nervous conditions or complaints within the past ten years, and when, during cross-examination on the first day of trial, she denied seeing a psychiatrist "or anything" or having received treatment for emotional problems since her treatment by Dr. Morgan.

When plaintiff revealed she had consulted with a psychologist with regard to emotional problems, defendant objected to testimony about the psychologist for failure to disclose during discovery. When the objection was sustained, plaintiff offered to prove that she had sought psychological help for emotional distress after answering interrogatories; that she so told counsel the night before; the reasons she sought psychological help, and that she still had emotional problems. She wanted also to establish that she visited the psychologist twelve times regarding emotional problems in connection with sexual relations with her husband. Plaintiff also sought a half day recess to look into the situation regarding the psychologist, and later requested leave to dismiss without prejudice in order to get evidence of emotional problems before a jury. In response to all such requests, the court spoke to the record:

"THE COURT: Well, so there will be no misunderstanding then, by reason of the statements of counsel which have been in the course of this record, the Court does overrule the plaintiff's motion for leave to dismiss the petition without prejudice.

The plaintiff will be permitted to testify on direct examination as to the identity of the psychologist who was consulted by the plaintiff.

The plaintiff will, in connection therewith, be entitled to describe her emotional problems which evidence, of course, is already in the record to some extent. And the plaintiff will be permitted to identify the time period during which consultations were had with the psychologist. And that will be the extent of the inquiry permitted.

Plaintiff will not be permitted to testify as to expenses incurred by her visits to the psychologist.

Of course, the plaintiff will not be permitted to testify as to what the psychologist told her—

MR. SHAFER: Oh, shucks.

THE COURT: —or anything beyond the limited areas that we have just mentioned.

Now, of course, should the defendant open up any of the subject matter on cross-examination, then that will alter the subject matter of it".

Appellant's difficulty under this point is demonstrated by her acknowledgement that such rulings are matters within the discretion of the trial court; and that such exercise of the court's discretion will not be disturbed on appeal unless it is manifest that it was abused. *Fowler v. S–H–S Motor Sales Corp.*, 560 S.W.2d 350, 356 (Mo. App.1977). This record does not so show.

Appellant charges the court erred (4) in an abuse of discretion with respect to enforcement of the rule of exclusion of witnesses by permitting Dr. Masters to testify after he had been in the courtroom for two minutes, and refusing to permit plaintiff's husband, Barry Stanford, to testify after he had been in the courtroom for two days.

Appellant acknowledges that exclusion of witnesses during trial is a matter within the discretion of the trial court. Dr. Masters was called by the defense as an expert on the plastic surgery performed by plaintiff. The record shows that Dr. Masters was present inadvertently for two minutes during the admission on behalf of defendant of hospital records. There is no demonstration of prejudice to plaintiff's case by such presence. No abuse of discretion appears from the receipt of his testimony. *State v. Lord*, 286 S.W.2d 737, 741 (Mo.1956). In contrast, Mr. Stanford had sat through two days of trial, when he was offered for the limited purposes of discussing sexual problems he and his wife had experienced during their marriage, a subject covered by Mrs. Stanford in her testimony. Exclusion of his testimony in such circumstances was consistent with enforcement of the rule, and thus did not constitute an abuse of discretion.

Appellant charges the court erred (5) "in losing his judicial cool in his comments and rulings as to plaintiff's breast feeding of her new baby which * * * upset plaintiff and her counsel and instilled in both the impression that the trial court was prejudicial * * * and the incident caused the court to abuse its discretion * * while preventing plaintiff from a fair and impartial trial * * *."

The referenced incident took place in chambers. It occurred in discussion of frequency and places of breast feedings of plaintiff's child and hours of trial. There is no showing that the jury was made aware of the matter, nor is there any demonstration of prejudice. Accordingly, there is no basis for the charges of prejudice and abuse of discretion. *Holt v. Queen City Loan and Investment, Inc.*, 377 S.W.2d 393, 401 (Mo.

1964); *Harriman v. Harriman*, 281 S.W.2d 566, 571 (Mo.App.1955).

Appellant charges the court erred (6) in failing to grant a new trial "because the verdict was clearly against the weight of credible evidence on the issue of informed consent * * *".

An appellate court is not authorized to weigh the evidence. *Wilcox v. Coons*, 362 Mo. 381, 241 S.W.2d 907, 916 (banc 1951). Accordingly, this charge was for the trial court alone. *Stevens v. Wetteran Foods, Inc.*, 501 S.W.2d 494, 496 (Mo.App.1973).

Appellant charges the court erred (7) in permitting defendant to use an article, "Observations on the Myth of Informed Consent", in examination of plaintiff's expert on the issue of informed consent.

The article was written by Dr. Lynch of the Department of Plastic Surgery at Vanderbilt University. Although its authoritativeness was founded, it was never introduced. After its foundation was laid, Dr. Bass was asked if he agreed with its conclusions on patients' retention of physicians' warnings. This use falls within the rule that it is proper to cross-examine a medical expert by framing a proposition in the language of the author of a medical text and asking the witness if he agrees with the proposition. *Gridley v. Johnson*, 476 S.W.2d 475, 481 (Mo.1972).

Appellant charges the court erred (8) in permitting defendant to comment in argument on the absence of plaintiff's psychologist.

Plaintiff did not preserve this allegation of error for review by inclusion in her motion for new trial.

Judgment affirmed.

All concur.