Dane H. REID et al.,
Plaintiffs-Appellants,

v.

Glennon A. TIMME,
Defendant-Respondent.

No. 40686.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 30, 1980.

W. Scott Pollard, Florissant, for plaintiffs-appellants.

Strubinger, Dowd, Donnelly, Haseltine & Wilbers by John J. Donnelly, St. Louis, for defendant-respondent.

SATZ, Judge.

Plaintiffs in this action are Dane Reid, a minor, and his parents, James Reid and Lois Reid. In Count I of a three-count Petition, Dane Reid, by and through his next friend, James Reid, sued defendant, Glennon Timme, for personal injuries resulting from a collision between a motorcycle or "trail bike" being operated by Dane Reid and a pick-up truck being operated by Glennon Timme. In Count II, James Reid and Lois Reid sued Glennon Timme for the loss of services, companionship and medical expenses caused by the injuries of Dane Reid. In Count III, James Reid sued for property damages to the "trail bike". A jury verdict was returned for defendant Glennon Timme on all three counts. Plaintiffs appeal. We affirm.

On each count, the trial court submitted a contributory negligence instruction which permitted the jury to find plaintiff Dane Reid contributorily negligent if he failed to yield the right-of-way to defendant or

failed to keep a careful lookout. The court also submitted a companion instruction defining the term "right-of-way". Plaintiffs question the propriety of giving the former instruction and question the form of the latter instruction. Since plaintiffs question the propriety of giving the contributory negligence instruction, we review the record to determine whether there is sufficient evidence to support the submission of this instruction, and, in so doing, we review the evidence in the light most favorable to defendant and give him the benefit of all reasonable inferences to be drawn from that evidence and disregard plaintiffs' evidence except as it tends to support the submission of the instruction. *E. g., Clauser v. Jennings*, 428 S.W.2d 3, 4 (Mo.App. 1968).

The collision between Reid, on his trail bike, and defendant, in his pick-up truck, occurred about 12:30 p. m., on a clear, sunny, dry day, on Sunset Park Road. Sunset Park Road is a paved, two-lane road, approximately 20 feet wide, which runs east and west. The western end of this road terminates at Sunset Park, and the first intersection is about one mile east of the Park, made by Shackleford Road, a north and south road, intersecting with Sunset Park Road. Near the western end of Sunset Park Road and about 10 feet north of the Road, a dirt path or trail begins, and this path or trail, which is two to three feet wide, runs east and parallel to Sunset Park Road for about 0.3 mile. The path or trail then makes a 90° turn to the south and runs into Sunset Park Road, some distance before the Shackleford intersection. The trail's end at Sunset Park Road is unmarked. According to Reid, there were no bushes, trees or weeds immediately to the west of the trail's end.

Prior to the collision, defendant was at Sunset Park. From the Park, he drove his pick-up truck on to Sunset Park Road and, after driving on to Sunset Park Road, defendant apparently looked to the northeast and saw the trail bike on the trail about 50 to 60 feet to the east. Defendant drove east, and shortly thereafter, he saw two pedestrians on the road, walking east, in his lane of traffic. At that time, the pedestrians were about 75 feet west of the point of the collision. One of the pedestrians was about one foot north of the south shoulder of Sunset Park Road, and the other pedestrian was to the left, about four feet north of the south shoulder. When defendant was about 30 to 40 feet behind the pedestrians, he turned into the west-bound lane of traffic in order to pass the pedestrians, continued east in the west-bound lane, turned his head to see if he had passed the pedestrians, then, turned his head back to look east, and, at that time, defendant saw Reid on his trail bike in the west-bound lane of traffic. One-half second later, defendant collided with Reid.

Prior to the collision, Reid was riding his trail bike north of Sunset Park Road. His home was in a subdivision south of the Road and, apparently, near and just opposite the end of the dirt trail. He intended to follow the dirt trail to its eastern end and then cross over Sunset Park into his subdivision. At the approximate time that defendant was driving on to Sunset Park Road, Reid was driving his trail bike on to the western end of the dirt path or trail, north of the Road, and, looking south, he saw the pick-up truck being driven on to Sunset Park Road. Thus, as Reid admitted, he knew the truck would be coming east on Sunset Park Road, parallel to Reid, as he drove east on the dirt trail. Reid drove east on the trail and never stopped his trail bike before driving on to Sunset Park Road.

After getting on to the trail at its west end, Reid drove east until the trail made its 90° turn to the south, and, at that point, he looked east to see if any west-bound traffic was coming on Sunset Park Road. He then slowed his trail bike to about 5 m. p. h. and drove on to Sunset Park Road. He then stopped his bike, after the front wheel of his trail bike was in the west-bound lane of traffic and his rear wheel was touching the north edge of the paved road. At that time, he looked to the west, saw defendant's truck 10 feet away from him, and the acci-

dent occurred a split second "after he looked up".[1]

■ Among other theories of recovery, plaintiffs submitted that defendant was negligent in being on the wrong side of the road. Defendant's counter submission was that Reid was contributorily negligent in failing to keep a lookout or in failing to yield the right-of-way. Plaintiffs complain the trial court erred in submitting a contributory negligence instruction on each count which required the jury to find for defendant if Reid failed to yield the right-of-way.[2] Plaintiffs' complaint centers on the statutory duty to yield the right-of-way and focuses on the MAI requirements for translating this duty into a proper instruction.[3] Section 304.351(5) RSMo 1978 is the controlling statute. It requires the "driver of a vehicle about to ... cross a highway from ... any private road [to] yield the right-of-way to all vehicles approaching on the highway ...". According to plaintiffs, the duty to yield imposed by this section is narrowly defined and circumscribed and does not extend to persons like defendant who are negligently approaching on the "wrong" side of the road.[4] Under plaintiffs' theory, Reid had no duty under the statute to yield the right-of-way or, stated otherwise, on the present record, his duty to

yield was obviated by defendant's negligence. Therefore, plaintiffs argue, Reid could not be contributorily negligent for failing to yield the right-of-way and the instruction permitting the jury to find him negligent in failing to do so was improperly given. We disagree.

Admittedly, there appears to be support for plaintiffs' contention. In *Long v. Binniker*, 228 Mo.App. 193, 63 S.W.2d 831 (Mo. App.1933) our colleagues in the Western District held it was error to give a right-of-way instruction for a plaintiff who might have been on the wrong side of the road. In that case, plaintiff approached an intersection from defendant's right, but, according to defendant's evidence, plaintiff approached the intersection on the wrong side of the road. The instruction in issue, however, permitted the jury to find for plaintiff if they found plaintiff arrived at the intersection before or at the same time as defendant, without regard to plaintiff's possible approach on the wrong side of the road. Holding the instruction to be erroneous, the court stated that, when vehicles simultaneously arrive at an intersection, the law giving the right-of-way to the driver on the right " 'applies only in favor of a vehicle entering from the proper side of the street' ". *Id.* 228 Mo.App. 193, 63 S.W.2d at

1. At trial, Reid testified that, after he drove on to Sunset Park Road, he looked to his west, saw defendant's truck about 100 feet away and the accident occurred 3 to 4 seconds later. However, in his deposition which was read at trial, his testimony was as it appears in the body of this opinion.

2. The instruction reads:
"Your verdict must be for defendant whether or not defendant was negligent if you believe:
First, plaintiff Dane H. Reid either:
  failed to keep a careful lookout, or
  failed to yield the right of way; and
Second, plaintiff's Dane H. Reid conduct, in any one or more of the respects submitted in paragraph First, was negligent; and
Third, such negligence of plaintiff directly caused or contributed to cause any damage plaintiff Dane H. Reid may have sustained."

3. From the record, it is not clear that the statutory duty was plead as a defense or that the trial court took or was asked to take judicial notice of the statutory duty. Nonetheless, the issues joined by the parties' briefs on appeal

center on Reid's alleged statutory duty to yield the right-of-way. Thus, we do not address Reid's possible common law duty to yield. We also note that plaintiffs do not complain and, perhaps, could not complain about the disjunctive submission of both Reid's duty to keep a lookout and his duty to yield the right-of-way. Hence, we are not concerned with the propriety of submitting both these duties albeit disjunctively.

4. Defendant argues that whatever the rule may be for drivers who are on the wrong side of the road negligently, the duty to yield should extend to him because he was not negligent in getting on the wrong side of the road. This argument is inappropriate given the issue on appeal. This issue is the propriety of the content of a contributory negligence instruction. Such an instruction assumes negligence on the part of the defendant. In contending this instruction was proper, defendant cannot argue that he was not negligent.

832. If plaintiff there had been driving on the wrong side of the road, according to that court, he did not have the right-of-way and, conversely, defendant did not have the duty to yield the right-of-way. *Id.* 228 Mo. App. 193, 63 S.W.2d at 832. In comparable situations, courts in other jurisdictions have likewise adopted this definition of a circumscribed duty of the disfavored driver. *See, e. g., Zeigler v. Carley,* 156 Cal.App.2d 643, 320 P.2d 165, 167 (1958); *Dyer v. Wallner,* 189 Wash. 486, 65 P.2d 1281, 1283 (1937); *but see, Carlson v. Whelan,* 197 Wash. 104, 81 P.2d 1001 (1938).

Fixing Reid with this duty in the present case has certain surface appeal. The *Binniker* case furnishes a basis for our doing so. In addition, the statutory duty would be explicit, narrowly defined and, thus, probably easy to apply.[5] Nonetheless, this explication of the statutory duty does not fit comfortably with other analyses of the same duty. Our colleagues in the Southern District have indicated the statutory duty to yield the right-of-way may extend to all drivers on favored roads, including those drivers approaching negligently. *See Tener v. Hill,* 394 S.W.2d 425 (Mo.App.1965); *Moore v. Fitzpatrick,* 31 S.W.2d 590 (Mo. App.1930). The duty is triggered when the disfavored driver knows or should know that a hazard or danger is imminent. *Tener v. Hill, supra,* 394 S.W.2d at 434; *Moore v. Fitzpatrick, supra,* 31 S.W.2d at 592. The presence of the favored driver on the wrong side of the road may be a factor in determining whether the disfavored driver should know that a collision is imminent but the presence of the favored driver on the wrong side of the road does not necessarily obviate the favored driver's duty to yield the right-of-way.

In both the *Moore* case and the *Tener* case, *supra,* a favored driver was travelling on the wrong side of the road. In each case, the disfavored driver's view of the favored driver was obstructed and a colli-

sion occurred at an intersection. In each case, the court rejected an instruction which allowed the jury to find the disfavored driver negligent for failing to yield the right-of-way. These results are not inconsistent with the result in *Binniker.* However, the reasoning in *Moore* and *Tener* is counter to the reasoning in *Binniker.* In reaching its conclusion in *Moore,* the court reasoned that the instruction was improper because the disfavored driver could not see the favored driver approaching and, thus, the duty to yield the right-of-way was not triggered. *Moore v. Fitzpatrick, supra* 31 S.W.2d at 591–592. The *Tener* court tracked this reasoning by stating the instruction in question improperly "excludes from the jury's consideration the qualifying circumstances that the [disfavored driver's] vision . . . was obscured and that he had no reason to anticipate . . . [the favored driver] would *approach* the intersection then [on the wrong side of the road]; and, in the absence of knowledge or reasonable apprehension that an automobile" [emphasis theirs] would not approach the intersection on the wrong side of the road, the disfavored driver "was not required to anticipate the presence of a favored driver on the wrong side of the road". *Tener v. Hill, supra* 394 S.W.2d at 434. Again, the duty of the disfavored driver was not narrowly defined to exclude a favored driver negligently on the wrong side of the road; rather, the duty to yield simply was not triggered by knowledge or reasonable apprehension of an imminent hazard.

The *Moore/Tener* analysis comports with analyses of the statutory duty found in other Missouri cases. In *Taylor v. Schneider,* 370 S.W.2d 725, 728 (Mo.App.1963) we defined the duty to yield imposed by § 304.021(5) RSMo 1959 (now § 304.351(5) RSMo 1978) as extending to *all vehicles* approaching on the favored road which have reached a point so near as to consti-

---

5. Under plaintiffs' theory, if a plaintiff submits that a defendant is negligent for driving on the wrong side of the road, the defendant would not be entitled to an instruction allowing the jury to find the plaintiff guilty of contributory

negligence for failure to yield the right-of-way. If the defendant's presence on the wrong side of the road is in dispute, he would, of course, be entitled to a converse instruction.

tute an immediate hazard. The focus is on the ability of the disfavored driver to perceive a hazard. There is no indication the reference to "all vehicles" does not encompass vehicles approaching on the wrong side as well as those approaching on the proper side of the favored road.

■ This analysis is also consistent with the holding in *Haymes v. Swan*, 413 S.W.2d 319 (Mo.App.1967), quoted approvingly in MAI. *See* MAI 14.01 (1980 Supp.). There, the court apparently concluded the plaintiff was first to enter an intersection and stated: "Whether or not plaintiff was contributorily negligent in entering the intersection ... would not obviate the primary duty of defendant to permit plaintiff first into the intersection, to pass in safety." *Id.* at 325. Admittedly, in the present case, the favored driver was negligent in a different manner and the right-of-way based on a different statutory duty than in the *Haymes* case.[6] Nonetheless, logic dictates the application here of the principle stated in the *Haymes* case that the negligence of the favored driver does not obviate the duty of the disfavored driver to yield the right-of-way. Furthermore, to be consistent with the General Comment on yielding the right-of-way in MAI 14.01, we are compelled to follow the *Moore/Tener* analysis. *See* MAI 14.01 (1980 Supp.). The Comment specifically states: "The failure of the favored party to exercise the highest degree of care in asserting the right-of-way does not relieve the less favored party from his duty to yield the right-of-way."

Finally, we note that the *Binniker* case, on its facts, fits within the *Moore/Tener* analysis. *Binniker*, like *Moore* and *Tener*, involved a collision at a blind corner. The disfavored driver's view of the favored driver was obstructed. Hence, the same result could be reached in *Binniker* by applying the rule that the duty to yield was not triggered because the disfavored driver could not have been aware of the immediate hazard.

Absent specific guidance from our Supreme Court, we choose to follow the analysis found in and suggested by the *Moore* and *Tener* cases. We find Reid's duty, as the disfavored driver, to yield the right-of-way was not limited to vehicles approaching the proper side of the road, or, stated otherwise, his duty was not obviated by defendant's negligent approach on the wrong side of the road. His duty would be and was triggered if he knew or should have known there was a reasonable likelihood of a collision with defendant. The record reflects that Reid's view of defendant's approach was not obstructed. Plaintiffs do not dispute this fact. Thus, on the present record, Reid's statutory duty to yield the right-of-way was triggered into existence. Because there was "evidence to show that the defined duty to yield existed ..." MAI 14.01, General Comment, it was proper to instruct the jury to find plaintiff contributorily negligent if they found he breached this duty, as defined in MAI. *See* MAI 14.01, General Comment and MAI 14.06.

■ Plaintiffs also object to the instruction defining "right-of-way" on two grounds.[7] First, they complain the instruction improperly submitted that plaintiff was crossing the highway from a "shoulder". Plaintiffs contend the word "private road" or "path" or "trail" should have been used instead of "shoulder". They argue the use of the word "shoulder" is a deviation from the applicable MAI and is, thus, presumptively prejudicial. *See Ogle v. Terminal Railroad Assn.*, 534 S.W.2d 809 (Mo.App.

---

6. The duty to yield was imposed by city ordinances which were "practically identical to subsections 1 and 2 of V.A.M.S. § 304.021 and [had] to do with intersection rights of way". *Haymes v. Swan, supra* 413 S.W.2d at 324.

7. The instruction reads:

"The phrase 'right of way,' as used in these instructions means the right of one vehicle to proceed ahead of the other.

When a vehicle is about to enter or cross a highway from a shoulder, a vehicle approaching on the highway has the right to proceed ahead of the vehicle entering from the shoulder provided a very careful person would so proceed under the same or similar circumstances."

1976). We disagree. The MAI applicable at the time of trial, MAI 14.06 (1969), reads in pertinent part as follows:

"When a vehicle is about to enter or cross a highway from an [alley] [private road] [driveway], . . ."

The Notes on Use indicate one is to "select the appropriate term" to fill in at this point. Because plaintiffs suggest "path" or "trail" would be appropriate, we assume they are not arguing that defendant's choice of appropriate terms was limited to "alley" "private road" or "drive-way". They only argue that "shoulder" is inappropriate. Whether an instruction is confusing or misleading is addressed to the trial court's sound discretion. *Deskin v. Brewer*, 590 S.W.2d 392, 401 (Mo.App.1979). We are unable to say the court abused its discretion in using the term "shoulder" instead of "trail".

Finally, plaintiffs argue the instruction given was an improper deviation from MAI 14.06 because it did not use the language of the revised instruction effective July 1, 1978. This point was not raised in plaintiffs' motion for new trial and hence need not be considered. Rule 78.07. However, we note the trial below concluded March 29, 1978, three months before the revision took effect. Defendant could not be required to use the revised instruction.

Judgment affirmed.

SMITH, P. J., and ALDEN A. STOCKARD, Special Judge, concur.