David FISCHER, Plaintiff-Respondent,

v.

**MAJ INVESTMENT CORPORATION, Defendant-Appellant.**

Nos. 43536, 43537.

Missouri Court of Appeals, Eastern District, Division Two.

March 9, 1982.

Motion for Rehearing and/or Transfer Denied April 16, 1982.

Application to Transfer Denied May 17, 1982.

Ben N. Messina, St. Louis, for defendant-appellant.

John E. Bell, St. Louis, for plaintiff-respondent.

GUNN, Judge.

Plaintiff-respondent David Fischer brought a two-count action against defendant-appellant MAJ Investment Corp. (MAJ) arising out of an alleged false return of service in a suit for unpaid rent and for

wrongful sequestration of wages.[1] Fischer was eminently successful in the presentation of his case to the jury, for he was awarded a verdict of $15,000 actual damages and $15,000 punitive damages on each of the two counts—a total of $60,000. However, the trial court, stating that it had no discretion in the matter, reduced the amount of actual damages in each count to $1,000, which was the amount of the prayer.

On appeal MAJ alleges the following trial court errors: (1) excluding the corporate president from the courtroom under the witness exclusion rule; (2) submitting an instruction on wrongful sequestration which deviated from the MAI on malicious prosecution and omitted the probable cause element; (3) refusing to grant a motion for directed verdict on the Count I punitive damage issue; (4) denying its motion for a new trial based on jury bias, passion and prejudice by reason of excessive verdict.

Fischer appeals the trial court's order reducing the actual damages awarded and its refusal to grant leave to amend the petition to conform to the verdict.

We affirm.

Fischer and his wife, Julie Fischer, rented a Clayton apartment from MAJ, signing a one-year lease. At the end of the lease term, the Fischers remained in the apartment as month-to-month tenants. They separated in August, 1977 with Julie moving to Cleveland, Ohio on a permanent basis. Bonds of marriage were sundered in September, 1977, with Fischer remaining in the apartment for a time.

In November and December, 1977, Fischer experienced periods of inadequate heating in the apartment. Also, a large section of plaster fell from the living room ceiling damaging several items of personal property. Expostulations of discontent were made, but MAJ was not fain to respond to the entreaties, and remedy was long in coming. In fact, a Clayton building inspector determined the apartment to be untenanta-

ble. As a forcible means of complaint, Fischer sent MAJ only a portion of his December rental payment. MAJ's response was to return the check with a form letter demanding full payment plus a late charge. Fischer advised MAJ that he was leaving and by the end of December had moved into the St. Louis apartment of a very close friend, Cynthia Black.

In January, 1978, Fischer suggested that MAJ retain the $125.00 security deposit made at the time the lease was entered into as payment for any rent due, but MAJ insisted on full rent for December and January. Receiving no further payment, MAJ filed suit against David and "Julia" Fischer in St. Louis Magistrate Court. MAJ utilized a special process server for the service of summons who certified that in April, 1978 he had obtained service on "Julia E. Fischer" by giving her a summons at the Fischer's St. Louis apartment and leaving a copy for Mr. Fischer with her.

On May 24, 1978, MAJ obtained a default judgment against Fischer for $270.00 plus costs. By letter it informed Fischer of the judgment. His attorney responded that there had been no service of summons. MAJ executed on its default judgment by obtaining a writ of sequestration, causing the seizure of two of Fischer's paychecks and the withholding of the total sum of $304.52.

Fischer subsequently instituted suit in St. Louis Circuit Court for false return of process and wrongful sequestration, seeking $1,000 actual damages and $25,000 punitive damages for each count. At trial, Fischer's whilom wife, Julie, testified that she had neither been served with summons nor been to St. Louis since her separation and divorce from Fischer. Cynthia Black likewise testified that she had never been served, and Fischer denied ever having received a summons. The process server insisted that he had left two copies of the summons at Cynthia Black's St. Louis apartment, serv-

1.  Fischer was a state employee.

ing them on a woman acknowledging herself to be "Julia" Fischer. At trial he identified Ms. Black as the person served.

The jury accepted Fischer's version of events, and awarded him $15,000 actual and $15,000 punitive damages on each count. In a post-trial *sua sponte* order the trial court reduced the amount of actual damages to the amount prayed for—$1,000 per count—and denied Fischer's motions to reinstate the verdict and to amend the petition. Both parties appealed.

At the outset of the trial Fischer's attorney requested imposition of the so-called witness exclusion rule and its particular application to MAJ's corporate president. Over MAJ's objection, Fischer's request was granted. On appeal, MAJ alleges denial of due process by failure of representation and "necessary assistance to counsel" during trial.

MAJ concedes that the polestar on this issue is that the exclusion of a witness during trial is a matter within the discretion of the trial court. *Stanford v. Morgan,* 588 S.W.2d 89, 93 (Mo.App.1979). Though given opportunity by interrogatory to disclose the names of those essential to its cause, MAJ failed to list its president. Nor did MAJ assert any persuasive reason for the necessity of the president's presence at the time the motion for exclusion was made.

■ Having failed to demonstrate any need for its president's presence at trial, MAJ has been unable to establish abuse of trial court discretion in excluding him from the courtroom except at the time of his testimony.

We certainly recognize that a corporation is entitled to have its representatives present at a trial, and in a multitude of situations, exclusion of the corporate president or other officer from the courtroom would be an abuse of trial court discretion. But for the reasons stated, in this case there was no abuse of discretion or prejudice to the defendant by imposition of the witness exclusion rule.

MAJ next contends that Fischer's verdict director on wrongful sequestration—Instruction No. 14—was erroneous for a variety of reasons.[2] It asserts that wrongful sequestration is in the nature of malicious prosecution; hence MAI 23.07, applicable to malicious prosecution, should have been submitted on the wrongful sequestration count. It also alleges that Instruction No. 14 erroneously omitted the element of probable cause, an essential element of malicious prosecution. Finally, it complains that the instruction is misleading and indefinite.

■ Objections to the instruction's failure to comply to MAI 23.01, malicious prosecution, and its failure to include the element of probable cause have first been raised on appeal and are therefore not preserved for review.[3] *Garmon v. General American Life Insurance Co.,* 624 S.W.2d 42, 47–48 (Mo.App.1981); *Stearns v. Be-Mac Transport Co.,* 621 S.W.2d 539, 543 (Mo.App. 1981); Rule 70.03; Rule 78.07. We note, nonetheless, that submission of MAI 23.07 would not certainly have been appropriate, as MAJ insists. *Jackson v. Missouri Rating & Collection Co.,* 537 S.W.2d 442, 443 (Mo. App.1976), is precisely pertinent in this regard.

---

2. Instruction No. 14 directs a verdict for plaintiff in Count II if the jury believes:

   First, that the defendant caused a writ of sequestration to issue against plaintiff stating that the sum of $270.00 plus court costs was due and owing to defendant on the judgment, and

   Second, that the sum of $270.00 plus court costs was not due and owing to defendant on the judgment, and

   Third, plaintiff was thereby damaged.

3. In its motion for a new trial, MAJ does allege trial court error in the submission of Instruction No. 14 on the ground that it omits the element of lack of probable cause. It claims, however, that this should have been included as an element of "wrongful execution and sequestration," not, as argued in its brief, because it is an element of malicious prosecution.

Further, we find no abuse of trial court discretion with respect to the contention that the instruction is misleading and indefinite. *Reid v. Timme*, 611 S.W.2d 363, 368 (Mo.App.1980); *Matter of Estate of Mitchell*, 610 S.W.2d 681, 688 (Mo.App. 1980). Submission of Instruction No. 14 did not constitute reversible error.

MAJ next asserts that the trial court erred in refusing to grant its motion for a directed verdict with respect to punitive damages for false return of service. It argues that Fischer failed to prove malice on the part of the process server.

In determining the sufficiency of the evidence to submit the question of punitive damages to the jury, we view the evidence in the light most favorable to the plaintiff and consider all inferences favorable to the submission. *Deck and Decker Personnel Consultants, Ltd. v. Thomas*, 623 S.W.2d 90, 92 (Mo.App.1981). It is not contested that a special process server is an agent for the principal and that a cause of action arises against the principal when a false return is made. *Moore v. Securities Credit Co.*, 475 S.W.2d 430, 432–33 (Mo.App. 1971). Further, punitive damages may be awarded against a corporate defendant for the wrongful acts of its agent committed in the course of his agency and by virtue of his authority as agent. *Tietjens v. General Motors Corp.*, 418 S.W.2d 75, 88 (Mo.1967); *Rinker v. Ford Motor Co.*, 567 S.W.2d 655, 669 (Mo.App.1978). Of course, to recover punitive damages, the evidence must show that the conduct of defendant or his agent was willful, wanton or malicious. *Tietjens v. General Motors Corp.*, 418 S.W.2d at 88 MAI 10.01. A showing of legal malice is sufficient—that is, the intentional commission of a wrongful act without just cause or excuse. *Labrier v. Anheuser Ford, Inc.*, 621 S.W.2d 51, 58 (Mo.banc 1981); *Deck and Decker Personnel Consultants, Ltd. v. Thomas*, 623 S.W.2d at 92; *Baker v. Newcomb*, 621 S.W.2d 535, 537–38 (Mo.App. 1981); MAI 16.01.

It can reasonably be inferred from the evidence that the special process server intentionally made a false return of process and lacked just cause or excuse for so doing. Evidence supporting submission of punitive damages indicates that no woman was served process in the Black/Fischer apartment as contended. The process server stood to increase his income threefold by certifying successful service. His conduct could be found to be wrongful, constituting a violation of section 517.130, RSMo 1969, in effect at the time. Submission of punitive damages, therefore, was proper.

In its final point MAJ maintains that the trial court erred in denying its motion for a new trial on the ground that the jury verdict was so excessive as to indicate jury bias, passion and prejudice. For support it directs attention to the discrepancy between the actual damages prayed for ($1,000 per count) and those awarded ($15,-000 per count).

An appellate court cannot conclude from the size of the verdict alone that the jury acted out of bias, passion and prejudice so that the verdict must be vitiated and a new trial granted. *See Tennis v. General Motors Corp.*, 625 S.W.2d 218, 229 (Mo.App.1981) (excessive verdict because of bias mandates new trial). The party making this assertion must also point to some incidents or error at trial which engendered jury misconduct. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 614–15 (Mo.banc 1977); *Green v. Hastings*, 621 S.W.2d 549, 551 (Mo.App.1981); *Mansfield v. Smithie*, 615 S.W.2d 649, 654 (Mo.App.1981); *McGowan v. Hoffman*, 609 S.W.2d 160, 166 (Mo.App.1980). MAJ has failed to support its claim of bias, passion and prejudice with any evidence other than the size of the verdict. The disparity between the actual damages prayed for and awarded does not compel a finding of jury misconduct particularly since, as Fischer notes, the jury was unaware of the amount of actual damages requested in the prayer. The jury was informed, however, that Fischer prayed for a total of $50,000 punitive damages and did award $30,000 in punitive damages. We

find no merit to the points of appeal raised by MAJ.

The final matter for our consideration is Fischer's request that the jury verdict of $15,000 actual damages on each count be reinstated.

After the jury verdict the trial court *sua sponte* reduced the amount of the judgment to $1,000 actual damages on each count to conform with Fischer's prayer. In so doing, the trial court stated that it had no authority to exercise discretion to grant leave to amend Fischer's petition to conform to the evidence and thereby reinstate the verdict. It therefore made no finding as to whether the verdict was excessive.

Recent appellate court decisions hold that the trial court in situations of the type before us is invested with discretion to allow amendment to pleadings to alter the prayer for damages. *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.*, 615 S.W.2d 574, 580 (Mo.App.1981); *Harris v. Associated Dry Goods Corp.*, 612 S.W.2d 389 (Mo.App.1981); *Yamnitz v. Polytech, Inc.*, 586 S.W.2d 76, 83 (Mo.App.1979). But some basis for the award of actual damages must exist. In this case the evidence does not support anything beyond the trial court's final award of $1,000 per count, albeit the trial court imposed the limitation of actual damages to the amount of the prayer in the belief that it had no discretion in the matter.

Fischer testified that his damages had been $95.00 for repairs to personal property damaged from falling plaster, $500.00 in fees setting aside the default, the approximate $305.00 taken from his paycheck and the loss of his $125.00 security deposit. He testified that he was "upset" over the default judgment and that fellow employees had been present when he was notified of his wage sequestration.

Damages for emotional upset brought about by humiliation cannot be measured with precision and are, at best, amorphous. *Hupp v. North Hills Lincoln-Mercury, Inc.*, 610 S.W.2d 349, 356 (Mo.App.1980). The ultimate test is what fairly and reasonably compensates the plaintiff for his injuries. *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 309 (Mo.banc 1978); *Mansfield v. Smithie*, 615 S.W.2d at 655. Fischer testified only as to his "upset" and he was, no doubt disquieted and embarrassed upon finding his wages sequestered on the basis of the default judgment. But even with the mention of the specific losses of approximately $1,000, there was nothing to justify the jury's largess of an actual damages award of over $1,000 on each count. *Compare, e.g., Young v. Jack Boring's Inc.*, 540 S.W.2d 887 (Mo.App.1976), with evidence of mental distress, ill health and physical discomfort to support $8,000 actual damages in a malicious prosecution action.

The record will not substantiate an award of damages of more than $1,000 on each count. Thus, the trial court reached the right result in reducing the amount of actual damages in this instance. Fischer was reasonably compensated for his actual damages by the award as reduced.

Judgment affirmed.

DOWD, P. J., and SIMON, J., concur.